933 A.2d 971 (2007)
396 N.J. Super. 317
In the Matter of Jennifer ROGIERS, Deceased.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2007.
Decided October 23, 2007.
*972 Jeffrey M. Bloom, West New York, argued the cause for appellant/cross-respondent, Rosa Rogiers.
Mark F. Hughes, Jr., Little Silver, argued the cause for respondent/cross-appellant, Ruben Martinez.
Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Jennifer Rogiers was born on September 30, 1983, severely handicapped as a result of a cervical cord injury doctors inflicted upon her at birth. On her behalf, her mother, Rosa Rogiers (Rogiers), filed a medical malpractice claim and recovered a $2.6 million judgment that was placed in a trust for Jennifer's benefit.
On September 2, 2005, Jennifer died intestate and without children. The issues on appeal concern the disposition of the remaining trust monies, which totaled approximately $1.1 million.
*973 Throughout Jennifer's lifetime, she was in her mother's custody. Her mother received funds from the trust to attend to Jennifer's needs. After Jennifer died, her father, Ruben Martinez (Martinez), sought half of the balance remaining in the trust as his intestate share under New Jersey intestacy laws. Rogiers challenged his entitlement to share in Jennifer's estate, and sought reimbursement for expenses she incurred and services she provided on Jennifer's behalf during her lifetime. Rogiers also claimed she was entitled to retroactive child support, though she made no claim for child support while Jennifer was alive.
Following cross-motions for summary judgment, the trial judge rendered an oral opinion that he memorialized in an August 16, 2006 order. In paragraph one of the order, he denied Rogiers's request for retroactive child support. In paragraph seven, he granted Martinez's request to share in Jennifer's estate, and ordered that the estate be divided evenly between Martinez and Rogiers. In paragraphs two through six of the order, the judge addressed Rogiers's claims for retroactive child support and reimbursement for monies she expended for Jennifer's care. He granted Rogiers's request for reimbursement in the amounts of $178,776, $13,894, and $134,287.83 for various services and expenditures. Because he concluded that Rogiers removed Jennifer from the jurisdiction contrary to a court order, the judge denied Rogiers's request for reimbursement in connection with medical services while she and Jennifer were in Ecuador, and her request for $2000 per month for living expenses.
On appeal, Rogiers asserts that because Martinez did not contribute to Jennifer's support during her lifetime, he does not qualify as her parent under the New Jersey intestacy laws, and as a result, he is not entitled to any portion of Jennifer's estate. She also asserts that she is entitled to retroactive child support and payment for all of the expenses claimed. Martinez has filed a cross-appeal, challenging the trial court's reimbursement award to Rogiers. He further asserts that disputed factual issues precluded summary judgment as to Rogiers's reimbursement claims.
We conclude that Martinez qualifies as a parent under the intestacy laws regardless of whether he contributed to Jennifer's support during her lifetime. We also conclude that the trial court correctly denied retroactive child support. Accordingly, we affirm paragraphs one and seven of the order. As to Rogiers's claims for reimbursement, we reverse and remand for further proceedings consistent with this opinion.

I
The medical malpractice suit, filed in New York, settled on August 14, 1989. Rogiers received $150,000 for her loss of Jennifer's services, and $2,595,000 was placed in trust for Jennifer. The settlement order reads, in pertinent part:
the remaining balance of $2,595,000 . . . be paid . . . to Rosa Rogiers and Irving Trust Company, [now Bank of New York (the Bank)] co-guardians of the property of the infant Jennifer Rogiers[,] and that said funds shall be deposited for the use and benefit of the infant plaintiff Jennifer Rogiers with [the Bank]. They shall . . . pay the bills for Jennifer Rogiers care, maintenance and other needs pursuant to allowance orders to be issued by the Surrogate of New York County.
After Rogiers moved to New Jersey, the Bank was removed as trustee. The Chancery Division subsequently transferred the funds to an irrevocable Special Needs Trust, appointing Thomas M. Venino, Jr. *974 as trustee. The order provides that the intent of the Special Needs Trust is
[t]o preserve assets to the maximum extent possible in order to insure the care and support and special needs of Jennifer Rogiers during the existence of the Trust . . . and to provide Jennifer Rogiers a source from which her needs may be met to the extent that she is not adequately provided for, in the sole and absolute opinion of the Trustee. . . . Further, it is the intent of this Trust that the Trustee pay or apply the net income and/or principal of the [Trust] to such extent and in such amounts as is required, as the Trustee in the sole and absolute exercise of his reasonable discretion shall deem to be in the best interests of Jennifer Rogiers. . . .
By way of example . . . the Trustee . . . shall pay or apply so much of the net income and/or principal of [the Trust] as may be required to provide or supplement home care, housekeeping and such other services, home improvements, equipment and vehicles to assure that Jennifer Rogiers be maintained in the least restrictive environment, whether at home or in a community residence.
The order states that upon Jennifer's death,
[a]ny portion of the principal and undistributed income of [the Trust] . . . which she shall not have validly appointed by her Last Will and Testament . . . shall be paid over and distributed to the persons who would be entitled to receive the property under the laws of the State of New Jersey then in force and in the proportions prescribed by such laws as if the primary beneficiary had then died intestate and a resident of the State of New Jersey.
In a supplemental order appointing Rogiers as permanent guardian, the trial judge directed that she not remove Jennifer from Hudson County without the court's permission. Rogiers admits that in January 2003 she took Jennifer to Ecuador without the court's permission, where they remained through December 2003.

II
The trial court ruled that as Jennifer's biological father, Martinez was entitled to one-half of her estate under the intestacy laws. Though on appeal Rogiers questions Martinez's parentage of Jennifer, her attorney admitted to the Chancery judge that Martinez was Jennifer's biological father; and in a certification in support of her claim for retroactive child support, Rogiers admitted that Martinez was Jennifer's father. Also extant is an April 19, 1991 order of filiation from the New York Court that establishes Martinez as Jennifer's father. That order is entitled to full faith and credit. N.J.S.A. 9:17-41(b) (determination of paternity made by another state entitled to full faith and credit). Rogiers has not raised sufficient genuine issues of disputed fact to warrant additional discussion of her claim that Martinez is not Jennifer's biological father. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); R. 2:11-3(e)(1)(E).
Nonetheless, Rogiers asserts that even assuming that Martinez is Jennifer's biological father, he does not qualify as a "parent" under New Jersey's Probate Code in that he failed to support Jennifer during her lifetime. She claims that the term "parent" as defined in the Probate Code is ambiguous. Without a specific reference, she refers to a "Merriam-Webster's Dictionary" definition of "parent," which states that a parent is not only one who "brings forth offspring," but also includes a person who "brings up and cares for another." Rogiers posits that the Probate Code should be deemed to include the *975 latter definition, which would preclude Martinez from being considered Jennifer's parent for purposes of the intestacy laws because he neither raised nor cared for her.
Martinez claims that he visited Jennifer as often as he could, but Rogiers prevented him from seeing her. He nevertheless asserts that by law he is entitled to one-half of Jennifer's intestate estate in that the Probate Code does not require a parent to fulfill any affirmative obligation of support or care to inherit from the child. The trial court agreed with Martinez, as do we.
In considering Martinez's claim, we construe the facts in a light most favorable to Rogiers. Brill, supra, 142 N.J. at 540, 666 A.2d 146. In doing so, we assume that Martinez did not contribute to Jennifer's support.
The intestate estate of a decedent not survived by a spouse or domestic partner, or by any descendants, passes to the surviving parents in equal shares. N.J.S.A. 3B:5-4b. The Probate Code defines a "parent" as "any person entitled to take or who would be entitled to take if the child, natural or adopted, died without a will, by intestate succession from the child whose relationship is in question and excludes any person who is a stepparent, resource family parent or grandparent." N.J.S.A. 3B:1-2. Where the relationship of parent and child must be determined for the purposes of intestate succession, the parent/child relationship may be determined according to the New Jersey Parentage Act. N.J.S.A. 3B:5-10. The Parentage Act defines the parent/child relationship as "the legal relationship existing between a child and the child's natural or adoptive parents, incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship." N.J.S.A. 9:17-39.
As we previously indicated, Rogiers asserts that the statutory language is ambiguous in defining the term "parent." In examining that argument, we begin with the words of the legislative enactments. When the meaning of statutory language is clear, it is our duty to enforce the statute as written, giving the language of the statute its ordinary meaning. Miah v. Ahmed, 179 N.J. 511, 520, 846 A.2d 1244 (2004). "[T]he plain language of [the] statute is the best indicator of legislative intent." R.A.C. v. P.J.S., Jr., 192 N.J. 81, 95, 927 A.2d 97 (2007). We need not look beyond the statutory terms to determine the Legislature's intent when the statutory terms are clear. State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989). Only if a statute is ambiguous do we resort to extrinsic aids to ascertain the Legislature's intent. Wingate v. Estate of Ryan, 149 N.J. 227, 236, 693 A.2d 457 (1997). It is not our function "to `rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)).
Here, we have no need to examine extrinsic aids, such as the dictionary, to determine the Legislature's intent as to the meaning of the term "parent." We disagree with Rogiers's contention that these statutes are ambiguous in defining that term. The meaning of the statutory language is clear. A parent includes mother and child and father and child legal relationships, either natural (biological) or adoptive. Martinez is Jennifer's biological parent. That alone establishes the requisite legal relationship between Martinez *976 and Jennifer to qualify him as a parent under the Probate Code for purposes of the intestacy laws.
Though no appellate court in this State has addressed whether a parent's right to take from a child's estate is conditioned on that parent having supported the child during her lifetime, a trial court decided an identical issue in 1985, and concluded that it is not necessary that a parent support a child to inherit from the child under the intestacy laws. In re Estate of Rozet, 207 N.J.Super. 321, 325, 504 A.2d 145 (Law Div.1985).
In Rozet, the father claimed half of his deceased son's estate, though he had abandoned his son and had failed to comply with child support orders. Id. at 324, 504 A.2d 145. The mother claimed that the father had waived his right to any portion of the estate because he had abandoned the child. Ibid. Judge Connor found that while the mother's arguments were compelling, the plain language of N.J.S.A. 3B:5-4b did not prohibit the abandoning parent from taking under the intestate laws. Id. at 325, 504 A.2d 145. Here, the trial court, following the reasoning in Rozet, arrived at the same conclusion. We agree. The plain language of the Probate Code does not condition a parent's right to take from a child's estate under the intestacy laws on that parent having contributed to the child's support.
It is also significant that the subject section of the Probate Code has been amended twice since the Rozet decision, and the Legislature has not chosen to require a parent to support a child to be entitled to his or her intestate share upon the child's death. See L. 2004, c. 132, § 47; L. 2005, c. 331, § 3. The Legislature is deemed to be familiar with judicial construction of is enactments, Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227, 638 A.2d 1301 (1994), and if it had intended to contravene the decision in Rozet, it could have done so when it enacted the amendments. See Johnson v. Scaccetti, 192 N.J. 256, 277, 927 A.2d 1269 (2007) ("Legislature knows how to express its disagreement with case law by amending a statute if it believes a court has misconstrued its intent.").
Rogiers further claims we should read the New Jersey Probate Code to include that portion of the Uniform Probate Code that prohibits inheritance from a child by either natural parent unless that parent has openly treated the child as his or her own and has not refused to support the child. Unif. Probate Code § 2-114(c), 8 U.L.A. 91 (1998). Rogiers's reliance on the Uniform Probate Code is misplaced.
The administration of estates in New Jersey is governed by Title 3B of the New Jersey statutes. Title 3B revised Title 3A. N.J.S.A. 3B:1 to -12A, Preface. Prior to Title 3B's enactment, the laws governing the administration of estates were based on the proposed Uniform Probate Code. Ibid. "The substance of those enactments [was] carried forward into new Title 3B." Ibid. Thus, had the Legislature intended to adopt section 2-114(c) of the Uniform Probate Code, it could have done so when it adopted other provisions of that code. We construe the failure of the Legislature to adopt that provision, while adopting other provisions, to mean that the Legislature has determined not to require a parent to support a child to inherit from that child under the intestacy laws. Simply put, had the Legislature intended to include that provision, it could have, but it chose not to. See Brunswick Corp. v. Dir., Div. of Tax., 135 N.J. 107, 117, 638 A.2d 805 (1994) (inclusion of a specific tax exemption and absence of another exemption indicates Legislature did not intend to include the latter exemption).
*977 Rogiers also points to two bills pending in the New Jersey Legislature that she claims show a legislative intent to preclude a nonsupporting parent from inheriting from a child. Assembly Bill 3488 eliminates the inheritance rights of a surviving parent in certain civil actions, if that parent had abandoned the child. Assemb. 3488, 212th Leg. (N.J. 2006). And notably, Assembly Bill 3477 eliminates a parent's right to take from a child's intestate estate if the parent intentionally failed to provide support to the child while the child was alive. Assemb. 3477, 212th Leg. (N.J. 2006). The substance of these bills supports Rogiers's arguments. Nevertheless, the bills have not been enacted and the intestacy laws as currently constituted do not bar a nonsupporting parent from inheriting from a child who dies intestate.

III
We next turn to Rogiers's claim for retroactive child support. She asserts that she did not make a claim for child support during Jennifer's lifetime because she did not know where to locate Martinez. Though the trial judge concluded that Martinez had visited Jennifer at least thirty times during her lifetime, he did not directly address whether Rogiers was precluded from applying for child support because she could not locate him. Instead, the judge concluded that a child support claim does not survive the death of a child, and, even if it did, under the circumstances here, no retroactive child support was warranted.
Parents must contribute to the basic support needs of an unemancipated child to the extent of their financial abilities and regardless of marital status. Burns v. Edwards, 367 N.J.Super. 29, 39, 842 A.2d 186 (App.Div.2004). The absence of a meaningful relationship does not relieve a legally obligated parent from providing for his child's basic needs. L.V. v. R.S., 347 N.J.Super. 33, 41, 788 A.2d 881 (App.Div.2002). Nevertheless, "the enforcement, collection, modification and extinguishment of unpaid arrearages in alimony and child support payments are matters addressed to the sound discretion of the court." Mastropole v. Mastropole, 181 N.J.Super. 130, 141, 436 A.2d 955 (App.Div.1981).
Here, one of the trial judge's conclusions was that a child support obligation does not survive the death of a child. Though in many cases it may not, we do not consider it to be a hard and fast rule as there may be circumstances when child support may be awarded retroactively based upon equitable principles, even where, as here, no claim for child support had previously been made. See Carr v. Carr, 120 N.J. 336, 351, 576 A.2d 872 (1990) ("[C]ourts' equitable powers are particularly appropriate in the context of domestic relations."). That said, we do not find those circumstances extant here for several reasons.
First, though Martinez may not have visited Jennifer on a regular basis, it is not disputed that he did have contact with Rogiers on multiple occasions during Jennifer's lifetime. This presented Rogiers with opportunities to request child support from Martinez, but she did not do so. While that is not, by itself, a reason to deny retroactive child support, other factors support that conclusion.
A significant factor is that Rogiers was able to care for Jennifer's needs with trust funds. The funds were available to comprehensively provide for Jennifer's physical, emotional, social, educational and medical support; to ensure her "care and support and special needs . . . and to provide [her] a source from which her needs may be met to the extent that she *978 is not adequately provided for." Funds were to be disbursed to maintain Jennifer "to the greatest extent possible, in an independent environment to allow her to maximize her potential, both academically and socially" and "to promote interaction between [Jennifer] and such other persons as may assist with her needs, socially, emotionally or otherwise, thereby relieving such other persons involved in the care of [Jennifer] of any personal financial burden arising out of such interaction or care." The trust initially contained approximately $2.5 million. At Jennifer's death, $1.1 million remained. Thus, Rogiers had access to sufficient trust funds during Jennifer's lifetime to satisfy Jennifer's financial needs.
As the trial court noted in deciding not to award child support after Jennifer's death, "when the child is deceased, there is no further need to financially aid the child." Under the facts here, we find no basis to disturb that decision.

IV
Lastly, we address the remaining provisions of the August 16, 2006 order, which relate to Rogiers's requests for payment of expenditures she claims she incurred for Jennifer's support. We conclude that these issues are not ripe for summary judgment; they cannot be properly addressed without discovery and, if needed, a plenary hearing. Questions remain as to whether portions of the expenses claimed by Rogiers had already been paid to her by the trustee, and whether Rogiers willfully left the United States in violation of the court's order prohibiting her from doing so, or whether she was already out of the country at the time the order was signed. We also find it significant that the trustee, Thomas Venino, Jr., has not yet filed a final accounting. Until that occurs, the trial court will not be in a position to fully evaluate Rogiers's claims for reimbursement.
Consequently, we affirm paragraphs one and seven of the August 16, 2006 order, vacate paragraphs two through six, and remand for additional discovery and, if needed, a plenary hearing. The trial judge shall reevaluate all of Rogiers's expense claims, including her request for reimbursement for expenses she claims she properly incurred while in Ecuador and her claim for $2000 per month for living expenses. We do not retain jurisdiction.