**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3315-18T3

ALBERTO TRONCOSO,

     Plaintiff-Respondent,

v.

SAMIRA ZAMEL,

     Defendant-Appellant.

_____

          Argued telephonically May 13, 2020 –
          Decided June 9, 2020

          Before Judges Whipple, Gooden Brown, and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-2327-06.

          Paul C. Lomberg argued the cause for appellant (Lomberg & DelVescovo, LLC, attorneys; Paul C. Lomberg and Francine DelVescovo, on the briefs).

          Brian M. Schwartz argued the cause for respondent (Schwartz Vinhal & Lomurro Family Law, LLC, attorneys; Brian M. Schwartz, on the brief).

PER CURIAM

Defendant Samira Zamel appeals from a February 25, 2019 order entered following a post-judgment plenary hearing, adjudicating the parties' obligation for college expenses, child support, medical insurance, and counsel fees. Defendant also challenges an April 26, 2019 order addressing her obligation to reimburse plaintiff Alberto Troncoso for these expenses. We affirm.

The parties divorced in 2009 following a nearly fourteen-year marriage, which produced a son and a daughter, who are now twenty-one and nineteen years of age, respectively. Pursuant to the parties' Matrimonial Settlement Agreement (MSA), plaintiff paid defendant $2166 per month in child support from January 2009 to January 2011, based on an agreed upon gross income of $500,000 for plaintiff and no earned income for defendant. Thereafter, in accordance with the MSA, plaintiff agreed to pay defendant $3000 per month in child support from 2011 to 2016. This sum was based on plaintiff's gross income of $500,000, and an agreed upon imputed income for defendant of $45,000. The MSA stipulated the parties could apply to modify child support after January 2011 based upon a substantial change in circumstances.

Under the MSA, plaintiff also paid defendant term alimony starting at $180,000 per year for two years following the divorce, and thereafter reducing to $90,000 per year plus fifteen percent of plaintiff's earnings over $350,000 until 2015, at which point alimony terminated. Alimony was based on an

imputed income of $45,000 to defendant, and the parties agreed she could earn up to $100,000 per year without her earnings triggering an alimony modification. The MSA imputed income to defendant because she was unemployed at the time of the divorce, having left her career in corporate finance after the birth of the parties' daughter. Defendant enrolled in nursing school in 2015, and in July 2017, commenced full-time employment as an emergency room nurse.

Pertinent to the issues raised on this appeal, the MSA also stated:

> 6.1(D). Upon graduation from high school of any child, the amount of child support shall be reviewed by the parties taking into consideration the parties' respective contribution to post-secondary education, the parties' respective incomes and the Child Support Guidelines, effective at that time as adopted by the State of New Jersey.
>
>   . . . .
>
> 6.3. The parties acknowledge that each of them shall have an obligation to contribute toward the undergraduate college, junior college, vocational or trade school education of any child of the marriage . . . . Such payments shall include all necessary charges for application fees, pre-admission standardized tests, tuition, room, board, activity fees, lab fees, books and supplies, transportation, etc. . . . The proportion of each party's contribution toward such expenses shall be governed by the factors as set

forth in <u>Newburgh v. Arrigo</u>[1] or other statutory and case law that may then exist.

. . . .

6.4(D). It is the expectation of the parties that [defendant] shall obtain employment for which she receives a wage.

. . . .

6.9. Work-related child care.  Should the [defendant] obtain full time employment, which employment requires reasonable work-related child care with an accredited or otherwise agreed-upon child care provider, [plaintiff] shall pay [sixty-six percent] of said cost directly to the provider, and the [defendant] shall pay [thirty-four percent] of said cost.  The percentage contribution toward child care may be reviewed and reallocated at any time alimony and/or child support is reviewed and/or reallocated.

The parties' son enrolled at Rutgers University beginning in Fall 2017, and in September 2017 plaintiff moved to enforce the college contribution provision of the MSA and modify child support due to the son's residence on campus.  Defendant cross-moved to deny the motion and compel plaintiff to pay the college expenses in full and continue paying her $3000 per month in child support.  Alternatively, defendant sought an increase in child support if the court determined both parties were to contribute to college, arguing the parties' son would be home 177 days during the school year.  She also argued

---

[1]  88 N.J. 529 (1982).

an increase was warranted based on a change in circumstances, including the children's maturation and the termination of alimony.

The trial judge conducted a three-day plenary hearing, during which each party testified and entered the February 2019 order, making all relief retroactive to the motion filing date. The judge ordered: (1) the parties to pay college expenses for their son in proportion to their income, allocating eighty-three percent of expenses to plaintiff and seventeen percent to defendant; (2) child support of $458 per week; (3) plaintiff continue to pay for the children's automobile, extracurricular, cellular telephone, computer, college prep and tutor, medical and dental insurance, and unreimbursed medical expenses; (4) defendant pay $10,000 representing twenty-five percent of plaintiff's counsel fees; and (5) if the parties could not agree on a payment schedule for the college costs and reimbursement of child support, they could submit certifications setting forth their proposed repayment schedules for the judge to decide.

The judge also issued detailed written findings. She addressed each Newburgh factor and concluded the factors favored defendant's contribution to the college expense. She stated:

> The only real issue regarding the cost of the children's education is that the [d]efendant thought that she did not have to pay her fair share of the cost because she believed that [p]laintiff was going to pay

for the entire cost for both children. . . . There was nothing in the proofs presented at the [p]lenary [h]earing or in the parties' MSA that would lead anyone, including the [d]efendant, to believe that the [p]laintiff planned to pay for the entire cost of college without some contribution from the [d]efendant.

Also, [d]efendant lacked credibility when discussing her financial information. Defendant intentionally misrepresented facts in her initial [c]ertification filed with the court. For example, [d]efendant alleged that she was unable to maintain employment earlier than 2017, because no provision had been made for work related childcare in the MSA. Paragraph 6.9 of the parties' MSA specifically provides for a [sixty-six percent]/[thirty-four percent] allocation of work[-]related childcare expenses. Defendant represented to the court that [p]laintiff had unilaterally set up tutors for [the son]. Several text exchanges were provided to the court, which clearly showed [d]efendant's involvement in the selection and scheduling of tutoring. Defendant represented to the court that [p]laintiff did not approach her about the college decision process until [the son] had decided to attend Rutgers. Again, text messages were provided to the court that showed [p]laintiff approached [d]efendant regarding college selection as early as February 2016.

Defendant provided conflicting accounts in her Case Information Statement [CIS]. In her May 14, 2018 CIS, [d]efendant claims that her extra expenses for the children amount to [$4285] per month. Upon cross-examination of her testimony, many of the expenses [d]efendant claimed as extra expenses were already being paid by [p]laintiff, including car insurance for the children, car payment for [the son], vacations, weekly spending money and college costs. . . . Defendant claimed expenses she never incurred and that she tried to have this court believe that she

only earned $29,000 per year when in fact, that amount constituted her salary for less than one-half of the year. Her projected income for 2018 based upon her weekly salary is approximately $71,500[], not the $29,000 that she claimed. . . .

In determining each parties' responsibility in relation to [the son]'s college tuition and costs, the [c]ourt calculated the proportionate share based on the parties' incomes for 2018 attributing $465,423[] that he earned in 2017 to [p]laintiff and $71,500[] to [d]efendant . . . . Accordingly, [p]laintiff shall pay [eighty-three percent] of [the son]'s college costs and tuition per year and [d]efendant shall pay [seventeen percent] of [the son]'s college tuition and costs per year, which the [c]ourt finds is affordable for [d]efendant to pay. The cost of tuition at Rutgers is $29,088[] per year, and [d]efendant's [seventeen percent] share of the cost is approximately [$4900] per year. Defendant would have to pay approximately $412.00 per month, which is affordable for the [d]efendant.

The judge addressed each factor of N.J.S.A. 2A:34-23(a) governing child support and concluded the factors favored plaintiff. She found:

The parties' son . . . is in college and resides there during the school year with the exceptions of some weekends and the [p]laintiff pays for many of the expenses that are provided for in the [g]uidelines or that the [d]efendant would have a responsibility to contribute. Instead of seeking contribution, [p]laintiff has decided not to require contribution from the [d]efendant to pay those expenses she would be responsible to pay under the parties' MSA and the . . . [g]uidelines. In addition, it is clear to the [c]ourt that the parties followed the . . . [g]uidelines in establishing the initial [c]hild [s]upport and the increase that was effective on January 15, 2011. The

7

support was established at [$2166] per month. The calculation included an imputation of $45,000[] to [d]efendant and [p]laintiff was earning $500,000[]. Since that time, the parties' son is in college, the [d]efendant's income increased to $71,000[] and the [p]laintiff's income has decreased to $465,423[].

Defendant sought [c]hild [s]upport in excess of the [g]uidelines and argued that the children's expenses and lifestyle warrant an increase over the [g]uidelines. The [c]ourt finds that [d]efendant was less than candid with this [c]ourt during her testimony regarding her lifestyle, her income and expenses. She exaggerated her expenses incurred in maintaining the children's lifestyle and testified to expenses that the [p]laintiff pays for [to] which she has not contributed. Defendant's current lifestyle exceeds the lifestyle enjoyed by the parties during their marriage.

. . . This [c]ourt cannot ignore the fact that almost all of the extra expenses for the children, some of which are substantial, are paid by the [p]laintiff without contribution from the [d]efendant. The additional needs of the children are being met by the [p]laintiff. Since the parties' incomes are so disparate, a deduction in support for [the son] because he is away at college at times would be unfair. The school is located close to the [d]efendant's home and the child is home often during the weekends.

The children's overnights with the [p]laintiff are not as specified in the MSA. Since they have grown older, the children have less regimented time with the [p]laintiff. Plaintiff testified that the children spend many overnights with him especially during their breaks in school and during the summer when they participate in internships that he arranges. Based upon the testimony of the [p]laintiff, which this court finds to be credible, the court will use [fifty-two] overnights

8

as a reasonable amount to be credited to the [p]laintiff for the determination of [c]hild [s]upport.

Therefore, in applying the . . . [g]uidelines, the [p]laintiff shall pay the [d]efendant $458[] per week effective on September 19, 2017, the date of the filing of the [m]otion, directly to [d]efendant.

The judge also assessed the Rule 5:3-5(c) factors. She concluded:

Plaintiff shall be awarded counsel fees. The [c]ourt made this finding based on [d]efendant's lack of credibility . . . [and] explicit acknowledgement of her obligation to contribute to [the son]'s higher education costs in the MSA, yet her unwillingness to contribute any funds toward the cost when the time came to do so, and [her] bad faith.

Defendant's choice to wait until 2017 to return to the work force caused her to be in a position of having less assets, as she chose not to work from the date of the [final judgment of divorce] until 2017, even though she could have earned up to $100,000 per year without deduction from her alimony. Defendant not only could have acquired more assets by returning to work . . . but she would have been earning more than she is presently earning, as she would have been receiving increases in her salary as her experience grew. Furthermore, she could have saved her entire salary during the period that [a]limony was being paid, as the provisions of the MSA clearly permitted her to make up to $100,000 and still receive alimony.

Defendant clearly entered into the MSA and ignored the provisions that she was required to contribute and chose to leave herself in an economic position that was substandard to the [p]laintiff's. She lives far above her means and the marital lifestyle. She benefitted from the provisions of the MSA that the plaintiff was responsible to pay, such as alimony

and child support, yet she steadfastly refused to contribute to the cost of college even though she was required to do so. Defendant certainly could have accumulated more assets and increased her salary if she returned to work as agreed to instead of waiting until 2017 to obtain employment.

Defendant continued to hold the unreasonable position throughout the pendency of this matter that she should not have to contribute toward the cost of college and the [c]hild [s]upport should not be reduced because she could not afford the reduction. She filed misleading statements in her initial CIS and was deceitful in her testimony regarding her involvement in the college decision process, including the [p]laintiff[']s alleged unilateral decision to enroll the child in tutoring and her income.

It was evident to the [c]ourt that the [d]efendant's focus was on her own needs and lifestyle, not on the children's. Plaintiff more than fairly asks for [twenty-five percent] of the cost of his counsel fees, in the amount of $10,000[] for [d]efendant's bad faith. This Court finds the certification of counsel fees in the amount of $39,337[] along with costs of $889.85 to be fair and reasonable and [d]efendant should be responsible to pay $10,000[] toward the cost.

Even though the [p]laintiff earns significantly more than the [d]efendant does, an award of counsel fees based upon bad faith may be awarded.

The parties could not agree upon a repayment schedule. Therefore, the trial judge entered the April 2019 order compelling defendant to re-pay plaintiff at a rate of $200 per month for defendant's share of the 2017-2018 tuition in the amount of $9764.28, and credited plaintiff's child support in the

amount of $5470 representing his overpayment of child support. The judge reasoned as follows:

> [T]his court does not believe a substantial deduction in the [p]laintiff's weekly child support obligation is an equitable or reasonable solution to crediting the [p]laintiff for overpayments he is owed. This [c]ourt is cognizant of the [d]efendant's position that she cannot afford to meet the financial obligations of the parties' children, while also satisfying other financial requirements set forth by the [c]ourt, if the [p]laintiff's [c]hild [s]upport obligation is drastically, albeit temporarily, reduced in order to provide him with a credit for overpayment. However, the [p]laintiff is still entitled to said credit, and a slight modification to his [c]hild [s]upport obligation is necessary.

## I.

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). We apply the same standard of review when determining a parent's obligation to contribute to a child's college costs. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016). "We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and the judge has not abused his or her discretion." Ibid.

Counsel fee determinations also rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). We will disturb a trial court's counsel fee determination "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A.

Defendant argues the trial judge's allocation of college expenses was "unsupported by the evidence, the testimony of the parties, or the findings of fact by the [t]rial [c]ourt," and asserts the judge failed to consider the children's needs or best interests. She argues the judge gave no "reason[s] as to the weighing of the twelve Newburgh criteria," and failed to consider plaintiff's ability to pay the entire expense, defendant's inability to contribute as a result of the additional costs she incurred related to the son's education, and the disparity in the parties' incomes. Defendant also argues the judge erroneously concluded defendant misrepresented her income in an effort to intentionally mislead the court, inaccurately recounted the parties' conversations regarding tutors and the college selection process, and mistakenly concluded defendant believed plaintiff would pay the entire college expense regardless of the circumstances.

Defendant's claims regarding the judge's <u>Newburgh</u> factor findings lack merit. <u>R.</u> 2:11-3(e)(1)(E). Setting aside the fact the parties' MSA clearly and unambiguously obligated them to contribute to college, the judge addressed each <u>Newburgh</u> factor and concluded the majority favored a contribution by defendant to the expense. In addition to the MSA language, the factual evidence did not support defendant's argument that plaintiff shoulder the college burden alone. The parties' communications and testimony revealed plaintiff raised the issue of college contribution as early as November 2016, defendant was involved in the college selection process, and encouraged the parties' son to attend Rutgers, which both parties agreed was the proper choice.

Likewise, we find no error in the judge's allocation of the college expense in proportion to the parties' incomes, which contrary to defendant's argument, did consider the disparity in the parties' incomes. However, the judge's decision was based on more. The judge concluded defendant should bear her proportionate share of the college expense because she misrepresented many of the children's expenses plaintiff paid for as her own. Because the evidence proved otherwise, the judge concluded defendant could afford to pay her proportionate share of the college expense.

Although we agree with defendant the trial judge mistakenly found defendant misrepresented her year-to-date 2018 income as her total yearly

income, this finding was not the sole basis for assessing defendant's credibility and did not outweigh the MSA language, which committed the parties to the college expense contribution. Moreover, the finding did not mathematically affect the ultimate decision made by the judge on the college expense issue and defendant does not contest the $71,000 income figure attributed to her. As we have previously stated, where there is "surplusage in terms of the decisional result and not essential to support the judgment" it does not constitute harmless error. Roe v. Roe, 253 N.J. Super. 418, 431 (App. Div. 1992); R. 2:10-2.

B.

Defendant challenges the child support determination, claiming the judge used incorrect figures for work-related childcare expenses, inaccurately recounted the parties' conversations regarding tutors and the college selection process, improperly concluded defendant's CIS misrepresented the children's needs, and credited plaintiff with fifty overnights, where there was no such testimony adduced at trial. Defendant further argues the trial judge erred in reducing child support and should have awarded child support above the guidelines because she did not account for plaintiff's "good fortune," and instead reduced child support without plaintiff showing a substantial change in circumstances. Defendant also asserts plaintiff failed to include his current CIS or any prior CIS with his motion, and therefore did not demonstrate a

change in circumstances to modify child support. On the other hand, defendant argues the termination of alimony demonstrated a change in circumstance warranting an increase in child support.

A "child's attendance at college is a circumstance warranting review of the child support amount." Jacoby, 427 N.J. Super. at 113. "'The guidelines are not applicable when determining the parental obligation for child support of unemancipated college students[,]' and instead, the child support amount is to be set 'in light of all the financial circumstances of the parties and children.'" Id. at 120 (alterations in original) (quoting Raynor v. Raynor, 319 N.J. Super. 591, 614 (App. Div. 1999)). If the parties' income exceeds the maximum under the guidelines, the trial court has discretion in the methodology it "employ[s] in arriving at a child support award" with the goal of calculating an award "in the best interest of the child after giving due consideration to the [N.J.S.A. 2A:34-23(a)] statutory factors and the guidelines." Caplan v. Caplan, 182 N.J. 250, 272 (2005).

At the outset, we note the MSA specifically provided for a review of child support once the parties' son graduated from high school, and considering "the parties' respective contribution to post-secondary education, the parties' respective incomes, and the Child Support Guidelines . . . ." Even without this language, the son's residence at college represented a change in circumstance.

It was also reasonable for the judge to conclude plaintiff demonstrated changed circumstances based on the parties' incomes. The evidence and testimony revealed plaintiff's income decreased ten percent from the $500,000 figure in the MSA and defendant's income increased fifty-eight percent from the $45,000 set forth in the MSA to a projected $71,500.

Furthermore, the trial judge analyzed each N.J.S.A. 2A:34-23(a) factor in detail, considered plaintiff's income in excess of the guidelines, and concluded there was no basis to award support beyond the guidelines because plaintiff paid for many of the above-guideline expenses, "some of which are substantial," without a contribution from defendant. Moreover, the judge did not substantially reduce the child support payable to defendant, finding a reduction unwarranted due to the disparity in the parties' incomes, the proximity of the son's college residence to defendant's home, and the likelihood of concomitant expenses borne by defendant as a result of his ability to return home. The judge fulfilled her obligation to consider the children's best interests, statutory factors, and the guidelines under Caplan.

The judge did not err by crediting plaintiff with fifty-two overnights in the child support calculation. Although plaintiff testified there was "no set [parenting time] schedule" he testified the children spent an average of "one night over weekends" and lived with him during school breaks and the summer

and commuted with him to internships he had arranged for them. This evidence outweighed defendant's testimony that the children spent only one night per month with plaintiff. We discern no abuse of discretion.

We also find no abuse of discretion because the judge did not increase child support to account for the termination of alimony. The trial judge rejected this argument because defendant's budget showed she lived above her means, failed return to work during the time she was receiving substantial sums of alimony and did not save despite plaintiff paying substantial expenses for the children. This and the remaining arguments we have not addressed relating to child support, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

## C.

Defendant challenges the $10,000 counsel fee award to plaintiff, asserting the judge did not conduct an analysis of his counsel's affidavit of services or the reasonableness of the fees. She argues her inability to pay her own fees and plaintiff's superior financial position require reversal. We disagree.

Typically, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must

have acted in good faith in the litigation." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). However, "'where one party acts in bad faith, the relative economic position of the parties has little relevance' because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh, 329 N.J. Super. at 461 (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (1992)). See also J.E.V., 426 N.J. Super. at 493 (quoting Kelly, 262 N.J. Super. at 307) ("fees may be used to prevent a maliciously motivated party from inflicting economic damage on an opposing party by forcing expenditures for counsel fees.")

The trial judge performed a detailed analysis of the Rule 5:3-5(c) factors and concluded they preponderated in plaintiff's favor. The judge awarded fees "based on [d]efendant's lack of credibility [and] explicit acknowledgement of her obligation to contribute to [the son]'s higher education costs in the MSA, yet her unwillingness to contribute any funds toward the cost when the time came to do so, and [d]efendant's bad faith." The judge characterized defendant's position on college and child support as "misleading" and "deceitful." The substantial credible evidence in the record supports these findings.

Contrary to defendant's argument, the judge considered the parties' income disparity, noting "[d]efendant has the ability to pay her own counsel fees but has less ability to pay [p]laintiff's." However, the judge also found defendant "could have accumulated more assets and increased her salary if she returned to work as agreed to instead of waiting until 2017 to obtain employment." Under these circumstances, the award of twenty-five percent of plaintiff's fees was reasonable and not an abuse of discretion.

## II.

Defendant challenges the April 2019 order on grounds it lacked proper findings of fact and conclusions of law pursuant to Rule 1:7-4(a). She asserts plaintiff's lack of immediate need for repayment and the fact reimbursement of defendant's share of the college contribution equals nineteen percent of her net monthly income requires we reverse the court-imposed repayment schedule.

Enforcement and collection of support arrears is left to the sound discretion of the court. In re Rogiers, 396 N.J. Super. 317, 327 (App. Div. 2007). The trial court's obligation is to consider an obligor's ability to pay. See Crespo v. Crespo, 395 N.J. Super. 190, 195 (App. Div. 2007) (holding collection of arrears may be suspended until "such time as defendant has the ability to pay the arrears from income or assets, actual or imputed . . . .").

A-3315-18T3

Here, the trial judge reviewed defendant's financial circumstances and ordered a reimbursement of tuition in the amount of $200 per month, allowing a grace period of slightly more than a month before the repayment commenced. This did not constitute an abuse of discretion.[2]

## III.

Finally, because we affirm the trial judge in all respects, defendant's request to remand to a different trial judge is moot.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Similarly, although the April 2019 order did not provide a repayment amount for the counsel fee award, the trial judge on an application by either party can address the matter, considering defendant's other court-ordered obligation.

A-3315-18T3