**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4065-19

MIA LYNNE GERSTEL,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

JEFFREY GERSTEL,

      Defendant-Appellant/
      Cross-Respondent.

_____

            Argued January 3, 2022 – Decided January 25, 2022

            Before Judges Rose and Enright.

            On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1872-15.

            Neil J. Berger, attorney for appellant/cross-respondent.

            Brian E. Fleisig argued the cause for respondent/cross-appellant.

PER CURIAM

In this post-judgment matrimonial matter, defendant Jeffrey Gerstel appeals from the June 26, 2020 order denying his request for a reduction in child support. Plaintiff Mia Gerstel cross-appeals from the same order, contending the judge abused his discretion by denying her requests for counsel fees and failing to fix defendant's child support arrears. We affirm.

The parties married in July 1997, had three children together, and were divorced in 2009. When they divorced, the parties executed a settlement agreement which obligated defendant to pay plaintiff child support in the sum of $3,648 per month.

On April 20, 2017, the parties entered into a consent order, increasing defendant's child support obligation to $55,000 per year, or approximately $4,583 per month. The higher figure was based on defendant grossing between $300,000 and $325,000 per year as a physician, and plaintiff grossing between $59,000 to $75,000 as a learning disabilities teacher consultant.

Six months later, the parties agreed to reduce defendant's child support by fifteen percent, based on defendant assuming physical custody of the parties' oldest daughter. Accordingly, the parties stipulated in an October 30, 2017 consent order that defendant would pay child support at the rate of $3,895.83 per month. Although the parties also agreed to exchange financial information

and engage in additional discussions "to determine the appropriate level of reduction that should occur in light of the transfer of residential custody of [the parties' older daughter,]" they never modified the October 2017 consent order.

In April 2019, defendant moved to Florida to start a new job as a 1099 employee. On April 8, 2020, he wrote a letter to plaintiff, advising her that he was unable to pay his "full obligation of child support" due to the pandemic and a corresponding decreased caseload, as well as his "inability to find other employment." Defendant also stated in the letter:

> It is my hope that once this pandemic is managed, I will be able to make the income I used to, and will be able to continue paying you what I am obligated. How quickly that will be will largely depend on the pandemic recovery and how fast I can regain my normal income.

In May 2020, defendant moved for a reduction in child support, claiming, in part, that he grossed approximately $218,000 in 2019 (about $100,000 less than what he purportedly earned in 2017), and that his current average monthly income had dropped to approximately $4,400 per month. Moreover, he certified that because he was involved in litigation with his prior employer, he had "a tainted record which . . . significantly limited his ability to obtain more substantial employment." Defendant stated the pandemic "further reduced his income due to a substantial decrease in routine radiology examinations" and

3

because the reimbursements for the radiology cases were "much lower than [in] other parts of the country."

The following month, plaintiff filed a cross-motion, asking that the court deny defendant's modification motion due to a paucity of proofs. She highlighted that defendant provided only two pages of his 2019 tax returns, showing a gross income of approximately $268,000, and that he failed to submit any 2019 W-2s, 1099s, or K-1s. Additionally, she noted he submitted only a few emails from his employer to confirm his current income.

By way of affirmative relief, plaintiff cross-moved for an order: (1) compelling defendant to pay child support via wage garnishment through the probation department; (2) directing him to "satisfy any and all arrears in his child support obligation . . . within five . . . days[,]" and if the arrears were "not timely paid, and in full," to have his arrears paid at a rate of $500 per month "until the arrears [were] fully satisfied"; (3) imposing a one-missed payment bench warrant[1]; and (4) awarding her counsel fees and costs. In the event defendant's child support obligation was adjusted, she asked that he contribute

---

[1] In the certification accompanying her cross-motion, plaintiff asked the court to "implement a two[-]missed payment bench warrant . . . as a result of [defendant's] willful noncompliance[.]"

A-4065-19

toward the children's various expenses, including their unreimbursed health expenses, lessons, and activities.

Plaintiff acknowledged in her June 1, 2020 certification that the parties entered into a consent order in October 2017 based on their eldest daughter moving to defendant's residence, but she claimed that because the parties never pursued additional discussions as contemplated under the October 2017 consent order, and "never confirmed any further modification in [d]efendant's child support obligation or his contribution toward the children's expenses[,]" the court should enforce the April 2017 consent order rather than the October 2017.

Plaintiff also asked that defendant be held in violation of litigant's rights for refusing to abide by the April 2017 consent order. Additionally, she certified that defendant should "immediately pay his arrears in child support as of the date he decided to reduce his obligation." She did not specify the amount defendant owed her as of the date of her June 1 certification. Finally, plaintiff certified she was entitled to an award of counsel fees not only because she had to "borrow the money for [her] attorney's retainer from a friend" but also because "[d]efendant's behavior . . . cannot be condoned."

On June 26, 2020, the motion judge entered an order, accompanied by a comprehensive twenty-seven-page opinion, denying defendant's motion in its

A-4065-19

entirety, and denying each of plaintiff's cross-motion requests, except for her application to have defendant pay child support through the probation department. In that regard, the judge directed both parties to "present themselves to Probation within ten . . . days . . . to set up the account"[2] and ordered that defendant pay the "amount of child support set forth in the October 30, 2017 [c]onsent [o]rder ($3,895.83 monthly) through the Union County Probation [Department], effective immediately."

In denying defendant's modification motion, the judge explained:

> COVID-19 related reductions in salary are not sufficient to create a presumption of permanent changed circumstances. COVID-19 related reductions in salary have only existed since March 2020. There is no evidence, as states begin to reopen their economies, that salaries, such as [d]efendant's will [not] rise to [their] pre-pandemic levels. Additionally, [d]efendant admits to the [c]ourt that he is currently in search of a higher-paying position. Defendant has failed to show a permanent change in circumstance[s] warranting a downward modification in child support.
>
> Although [d]efendant is currently earning less than he did in 2017, the [c]ourt has neither enough current financial documents from [d]efendant, nor any proof of more than a temporary change in circumstance so as to warrant a downward modification in child support.

---

[2] The record reflects that on August 21, 2020, the judge found each party failed to establish the probation account as contemplated under the June 26 order.

Regarding plaintiff's cross-motion, the judge noted that the Family Part was "currently not issuing bench warrants for financial issues" in light of "the ongoing COVID-19 crisis[,]" but that plaintiff could renew her application for a bench warrant against defendant "once the COVID-19 crisis has passed." As to plaintiff's counsel fee request, the judge acknowledged he had "the authority to award counsel fees in family actions, pursuant to R[ule] 4:42-9(a)(1), N.J.S.A. 2A:34-23, and R[ule] 5:3-5." After outlining the factors enumerated in Rule 5:3-5(c), the judge denied plaintiff's fee request, finding that, "[a]s neither party's application is being granted (aside from child support being paid through Probation), and as neither party brought [his or her] application in bad faith, there is no reason why each party should not pay [his or her] own legal fees."

On appeal, defendant raises the following contentions for our consideration:

POINT I

THE LOWER COURT ABUSED ITS DISCRETION IN DEVIATING FROM THE GUIDELINE[S] AND DENYING FATHER'S MOTION SEEKING MODIFICATION.

POINT II

THE FATHER MET HIS BURDEN OF PROOF OF CHANGED CIRCUMSTANCES TO WARRANT A MODIFICATION OF CHILD SUPPORT.

7                                                          A-4065-19

On cross-appeal, plaintiff advances the following arguments:

POINT I

A.    [DEFENDANT'S] DIRECT APPEAL IS ENTIRELY WITHOUT MERIT, AS THERE ARE MULTIPLE AND INDEPENDENT LEGAL, FACTUAL AND EVIDENTIARY GROUNDS TO REJECT [HIS] CHANGED CIRCUMSTANCES ARGUMENT.

B.    [DEFENDANT] DID NOT PRESENT SUFFICIENT EVIDENCE TO THE FAMILY PART TO SUPPORT AN AWARD FOR CHANGED CIRCUMSTANCES UNDER LEPIS V. LEPIS.[3]

POINT II

A. [PLAINTIFF'S] CROSS APPEAL IS STRONGLY SUPPORTED IN THE CASE RECORD.  THE FAMILY PART FAILED ENTIRELY TO ADDRESS AN ISSUE THAT WAS SQUARELY BEFORE IT, THUS NECESSITATING A REMAND.  THE FAMILY PART SIMILARLY ABUSED ITS DISCRETION THROUGH SHORT-CIRCUITING THE WELL-ESTABLISHED CRITERIA APPLIED TO COUNSEL FEE APPLICATIONS IN THE FAMILY PART.

B. THE FAMILY PART FAILED TO CALCULATE [DEFENDANT'S] CHILD SUPPORT ARREARAGES TO [PLAINTIFF] AND TO ORDER THEM TO BE PAID.

C.  [PLAINTIFF] SHOULD BE ENTITLED TO AN AWARD OF COUNSEL FEES.

---

[3]  83 N.J. 139 (1980).

A-4065-19

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere[.]" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We will reverse only if we find the trial judge clearly abused his or her discretion[.]" Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

We also are mindful that matrimonial settlement agreements are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just" because they are "essentially consensual and voluntary in character[.]" Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). However, courts retain the equitable power to modify support provisions at any time. Lepis v. Lepis, 83 N.J. 139, 145 (1980).

The child support provisions of a matrimonial settlement agreement are subject to review and modification on a showing of changed circumstances.

Id. at 146. Under that standard, the judge determines whether the agreement is fair, equitable, and if it "should receive continued enforcement without modification[.]" Id. at 148-49. "When the movant is seeking modification of child support, the guiding principle is the 'best interests of the children.'" Id. at 157.

"The moving party has the burden of establishing a prima facie case of changed circumstances before discovery of the opposing spouse's finances will be ordered." Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997) (citing Lepis, 83 N.J. at 157). "By prima facie is meant evidence that, if unrebutted, would sustain a judgment in the proponent's favor." Baures v. Lewis, 167 N.J. 91, 118 (2001). "Courts have consistently rejected requests for modification based on circumstances which are only temporary or which are expected but have not yet occurred." Lepis, 83 N.J. at 151. Additionally, a moving party arguing a change for the worse in his or her own circumstances must show specifically "that changed circumstances have substantially impaired the ability to support himself or herself." Crews v. Crews, 164 N.J. 11, 28 (2000) (quoting Lepis, 83 N.J. at 157). Current earnings have never been viewed as "the sole criterion [upon which] to establish a party's obligation for support." Weitzman v. Weitzman, 228 N.J. Super. 346, 354 (App. Div. 1988);

10

see also Miller v. Miller, 160 N.J. 408, 420 (1999) (concluding that a party's "potential to generate income is a significant factor to consider when determining his or her ability to pay [support]").

Regarding a court's authority to award counsel fees, we are cognizant that "[a]n allowance for counsel fees is permitted to any party in a divorce action, R[ule] 5:3-5(c), subject to the provisions of Rule 4:42-9." Slutsky v. Slutsky, 451 N.J. Super. 332, 366 (App. Div. 2017). "An award of counsel fees and costs in a matrimonial action rests in the [sound] discretion of the trial court." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 544-45 (App. Div. 1992) (citing Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)).

"Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)). Additionally, "where a party acts in bad faith[,] the purpose of the counsel fee award is to protect the innocent party from [the] unnecessary costs and to punish the guilty party." Welch v. Welch, 401 N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)).

To demonstrate the reasonableness of the fee application, "'all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a).'" Slutsky, 451 N.J. Super. at 366 (quoting R. 4:42-9(b)). In determining whether and to what extent a counsel fee award is appropriate, the court must consider

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

Additionally, when calculating a fee award, a court must determine the reasonableness of the rates proposed by prevailing counsel and the reasonableness of the time spent. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (citing Rendine v. Pantzer, 141 N.J. 292, 335-36 (1995)).

A trial court's decision to grant or deny attorney's fees in a family action will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div.

2008) (quoting Rendine, 141 N.J. at 317). That abuse occurs when the family court's "decision is 'made without a rational explanation, [and] inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).

Governed by these principles, we discern no reason to disturb the judge's June 26 order. We add the following comments.

Regarding defendant's Points I and II, as well as plaintiff's Points IA. and IB., we note that in Lepis, the Court recognized a non-exhaustive list of factors that give rise to changed circumstances warranting modification of a support obligation. 83 N.J. at 151-52. Changed circumstances may "include 'an increase or decrease in the income of the supporting or supported spouse[.]'" Quinn v. Quinn, 225 N.J. 34, 49 (2016) (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)).

Here, it is undisputed that in support of his modification application, defendant supplied the trial court with a Case Information Statement (CIS), along with a partial 2019 tax return, a few emails from his current employer showing deposits made to his account, and a letter from one potential employer explaining why it would not hire him. As the motion judge concluded, such documentation fell short of what a payor needs to submit to a court in his or her bid to establish a prima facie case of changed circumstances. Indeed, defendant

13

effectively ignored his obligation to submit documentation proving what his financial circumstances were when the last support order was entered in October 2017, and how those circumstances compared to his current financial circumstances. See Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) ("[T]he changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations."). Further, defendant did not show his decrease in income was anything but temporary, having filed his application within a few short months of the onset of the pandemic, after advising plaintiff that "once this pandemic is managed," he hoped to "be able to make the income [he] used to, and . . . to continue paying . . . what [he was] obligated" to pay.

Also fatal to defendant's bid for appellate relief is the fact that he failed to provide us with a copy of the CIS he filed in conjunction with his modification application, thus depriving us of any meaningful review of the arguments he raises on appeal. See R. 2:6-1(a)(1)(I) (requiring the appellant to include in the appendix on appeal "such other parts of the record . . . as are essential to the proper consideration of the issues, including such parts as the appellant should reasonably assume will be relied [upon] by the respondent in meeting the issues

A-4065-19

raised"). Accordingly, we perceive no basis to second-guess the judge's denial of defendant's modification request.

Turning to plaintiff's cross-appeal, we observe as a threshold matter that we will not consider an argument which was not raised before the trial court. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Appellate review is not limitless. "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014).

Here, under Points IIA. and IIB., plaintiff faults the judge for failing to fix the amount of defendant's support arrears as they existed in June 2020. But when she filed her cross-motion, she did not formally seek this relief. Instead, she asked the judge to order defendant to "satisfy any and all arrears in his child support obligation to [p]laintiff within five . . . days of the [c]ourt's [o]rder." Further, in her June 1, 2020 certification, she asked that defendant "immediately pay his arrears in child support as of the date he decided to reduce his obligation."

It is well established that "the enforcement, collection [and] modification . . . of unpaid arrearages in . . . child support payments are matters addressed to the sound discretion of the court." In re Rogiers, 396 N.J. Super. 317, 327 (App. Div. 2007) (quoting Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App. Div. 1981)). Here, because plaintiff failed to formally request that the trial court fix defendant's child support arrears, and did not certify what amount defendant purportedly owed her, and because the record does not reflect whether the judge was informed if defendant made any support payments between the time plaintiff filed her June 1 certification and the issuance of the June 26 order, we decline to find the judge abused his discretion in omitting an arrearage figure from his order.

Similarly, we find plaintiff's counsel fee arguments in Points IIA. and IIC. unpersuasive. We note that while plaintiff argued before us that she was entitled to counsel fees by virtue of a default provision in the parties' original settlement agreement, neither her June 2020 certification nor her merits brief referred to this provision. Given that plaintiff did not properly present this argument to the trial court when she had an opportunity to do so, we do not consider it on appeal. Nieder, 62 N.J. at 234. More importantly, the record is devoid of any certification of services showing that plaintiff addressed each of the factors set

forth in <u>Rules</u> 5:3-5(c) and 4:42-9.  <u>See</u> <u>R.</u> 2:6-1(a)(1)(I).  Accordingly, we have no basis to conclude the judge abused his discretion in denying plaintiff's request for an award of counsel fees.

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4065-19