181 N.J. Super. 130 (1981)
436 A.2d 955
SALVATORE MASTROPOLE, PLAINTIFF-RESPONDENT,
v.
PATRICIA MASTROPOLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1981.
Decided October 26, 1981.
*132 Before Judges MICHELS, McELROY and COLEMAN.
*133 J. Mortimer Rubenstein argued the cause for appellant (Rubenstein & Sherwood, attorneys; Jay Rubenstein on the brief).
No brief was filed on behalf of respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Patricia Mastropole appeals from an order of the Chancery Division which (1) modified the judgment of divorce to require a joint custody arrangement for the one child born of her marriage to plaintiff Salvatore Mastropole; (2) reduced the amount of child support plaintiff was to pay her to $35 a week; (3) awarded her counsel fees and costs of $1,000 and (4) directed that the amount of arrearages in alimony and support be established by agreement of counsel or at a summary hearing.
Plaintiff and defendant were married on May 19, 1962 and one child, Salvatore, was born on June 19, 1969. Shortly after Salvatore was born, plaintiff and defendant separated. Salvatore remained with his mother. On November 11, 1974 plaintiff and defendant were divorced. The judgment of divorce incorporated by reference a separation agreement executed by the parties on February 15, 1974. The agreement, in pertinent part, provided that defendant would have custody of Salvatore, who was then 4 1/2 years old, and that plaintiff would have the right of visitation on Sundays and for one entire month each year. While the parties originally agreed that plaintiff was to pay defendant a lump sum of $100 a week for alimony and child support, the judgment modified this to specify that plaintiff was to pay $50 a week for alimony and $50 a week for child support. In June 1978, about 3 1/2 years after the entry of the divorce judgment, defendant moved to enforce her litigant's rights under R. 1:10-5, claiming that plaintiff had failed to comply with the alimony and child support provisions of the judgment. The trial judge determined from the affidavits that the amount of arrearages owed as of June 10, 1978 was $1,300 and ordered plaintiff to pay defendant a lump sum of $500 by July 15, 1978, *134 to be credited against the total amount due, and beginning July 7, 1978 the sum of $25 a week until the balance due on the arrearages was paid in full. The trial judge also ordered defendant to continue to make the alimony and child support payments required by the judgment.
In March 1979 plaintiff moved to modify the judgment. Specifically, he sought to transfer sole custody of Salvatore to himself and to reduce the amount of alimony that he was required to pay defendant. Plaintiff claimed in his supporting affidavit that he was a self-employed contractor and that he had an income of between $2,000 and $2,500 a month. Additionally, he pointed out that he was now the father of a five month-old-child which was born as the result of his new marriage. Plaintiff's new wife also filed an affidavit, claiming that defendant had left Salvatore alone on various occasions and that Salvatore had told her in a telephone conversation that he was afraid of his mother and did not wish to live with defendant any longer. Rene Avila filed an affidavit claiming that she was acquainted with and had been a guest in defendant's home on many occasions and that she had observed defendant scream at Salvatore for no apparent reason. She also claimed that Salvatore would eat alone and on occasion would be locked in his room when people came to visit defendant.
Defendant opposed any change in custody or reduction in alimony  denying the charges leveled against her. She also claimed that plaintiff was still not complying with the alimony and child support provisions of the judgment notwithstanding the fact that his financial condition had improved substantially since the prior court order establishing arrearages.
The trial judge ordered the Passaic County Probation Department and Passaic County Diagnostic Center to investigate the custody issue and set the matter down for a plenary hearing on the issues of custody and arrearages. In the meantime, the trial judge continued sole custody with defendant. Since plaintiff's present wife is related to a member of the Passaic County *135 Probation Department, the probation investigation was conducted by the Bergen County Probation Department but the diagnostic report was prepared by the Passaic County Diagnostic Center. Following a plenary hearing during which the trial judge interviewed Salvatore in camera, the trial judge modified the custody provisions of the judgment even though he found that there was no proof that defendant was an unfit mother. On the contrary, the trial judge found that defendant was a good parent and that Salvatore was being brought up well. The trial judge then, on his own motion, ordered what he characterized as "a shared living arrangement" or, as it is more commonly referred to, joint custody of the child. Under the court-ordered arrangement, plaintiff would have overnight visitation with Salvatore on alternating weekends from Friday afternoon at about 5:00 p.m. until Sunday at about 8:30 p.m., as well as during the week from Tuesday afternoon through Thursday morning for those weeks following the weekends which Salvatore spent with his mother. Since the trial judge changed custody, he also reduced to $35 a week plaintiff's obligation to pay child support, awarded defendant attorney's fees and costs of $1,000 and directed that the amount of arrearages be established by agreement of counsel or at a summary hearing. This appeal followed.

I
Defendant first contends that the trial judge erred in changing the status quo and on his own motion imposing a joint custody arrangement. She argues that plaintiff did not carry his burden of showing changed circumstances which would justify modification of the initial custody determination. She also claims that joint custody would not be feasible in view of the antipathy that she and plaintiff have for each other and their refusal to communicate with each other concerning the child. Recently our Supreme Court placed its imprimatur upon the concept of joint custody. Beck v. Beck, 86 N.J. 480 (1981). However, in doing so, it noted that such custodial arrangements *136 "will prove acceptable in only a limited class of cases" and outlined the factors that courts should consider when contemplating an award of joint custody. Id. at 488, 497-501. The Supreme Court pointed out that "before embarking on a full-blown inquiry into the practicability of a joint custody arrangement, the court must determine whether the [child] has established such [a] relationship with both parents that [he] would benefit from joint custody." Id. at 497.
The primary consideration, of course, is what is in the best interests of the child  that is, what will "protect the `safety, happiness, physical, mental and moral welfare of the child.'" Id. at 497 (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). However, even though the relationship between the child and both of his parents may be such that it could reasonably be concluded that the child would benefit from joint custody, the party seeking a modification of the initial custody determination must show a change of circumstances warranting modification. Beck v. Beck, supra 86 N.J. at 496, n. 8; Mimkon v. Ford, 66 N.J. 426, 438 (1975); M.P. v. S.P., 169 N.J. Super. 425, 431 (App.Div. 1979); Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App.Div. 1958), certif. den. 28 N.J. 147 (1958). In Sheehan v. Sheehan we stated that:
There is no doubt that a judgment involving the custody of minor children is subject to modification at any time upon the ground of changed circumstances, In re Erving, 109 N.J. Eq. 294 (Ch. 1931); Casteel v. Casteel, 45 N.J. Super. 338 (App.Div. 1957), and that the party seeking modification bears the burden of proof. 17A Am.Jur., Divorce & Separation, § 838; 27 C.J.S. Divorce § 317(5).
The primary consideration of the court in matters of this type is the welfare of the children. The basic issue is a change in the circumstances which would affect the welfare of the children. In order to determine whether the circumstances have so changed since the original judgment as to warrant a modification, a court must have some knowledge or information as to the circumstances which existed on the date of the original judgment. This is for the twofold purpose of (1) acquainting the court with the facts which existed at the time that the original judgment was entered, so that he may ascertain what motivated the original judgment and determine whether there has been any change in circumstances, and (2) aiding the court in evaluating the bona fides of the person who seeks a modification upon the grounds of change in his status of fitness. Such evidence has a vital and essential bearing upon the welfare of the child. [51 N.J. Super. at 287-288]
*137 Here, the record reveals that plaintiff failed to sustain his burden of proof. There has been no showing made of changed circumstances affecting the welfare of Salvatore which would justify or warrant the trial judge's interfering with the initial order of sole custody and replacing it with a joint custody arrangement. Salvatore has been in the sole custody of his mother since she and plaintiff separated shortly after Salvatore's birth. The relationship between Salvatore and his mother has been a stable and a happy one, and Salvatore has developed into a happy, normal, well-adjusted child. Moreover, the trial judge found defendant to be both a fit and good parent. The only change that has occurred since the initial custody determination is that plaintiff has recently remarried and has established a home with his third wife which could accommodate Salvatore. In our view, neither the changes in plaintiff's marital status or living arrangement nor plaintiff's bare assertion that he could take better care of Salvatore than defendant justified the major change in Salvatore's lifestyle which the trial judge ordered.
Furthermore even if we were to assume that plaintiff has shown changed circumstances sufficient to warrant some modification of the existing custody determination, we are firmly convinced from our review of the record that the trial judge erred in awarding joint custody. The standards established by our Supreme Court in Beck v. Beck, supra 86 N.J. at 497-501, for an award of joint custody have not been met. The initial inquiry must be whether the child has established such relationships with both parents that he would benefit from joint custody. This is dependent upon a finding "that the child recognize[s] both parents as sources of security and love and wish[es] to continue both relationships." Id. at 497-498. The proofs show that Salvatore at best was ambivalent as to how he felt about his father. He wanted to stay with his mother. However, the trial judge suggested that he might like to stay overnight at his father's during the week. Salvatore was not *138 particularly enthusiastic about this arrangement, as appears from the following colloquy with the trial judge:
THE COURT: Well, I don't mean just visit.
Suppose you were to stay, say, at your mother's and a couple of days stay overnight during the week at your father's house?
SALVATORE MASTROPOLE, JR.: I don't know.
THE COURT: Would that be bad?
SALVATORE MASTROPOLE, JR.: Yeah  no.
THE COURT: No?
SALVATORE MASTROPOLE, JR.: (Witness shakes head).
THE COURT: I mean that way you'd get a chance to be with both of them. You don't think that's a good idea?
SALVATORE MASTROPOLE, JR.: I don't know.
THE COURT: Well, as I say, I want to be fair to both of them and see if we can do what's good for you.
What would your thoughts be  suppose you were to stay at your mother's, but visit on different weekends with your father, not just on Sunday, but go over there Friday night, stay over Saturday night, come back home and go to school Monday and then maybe during the week on some weeks stay overnight? How would you feel about that?
SALVATORE MASTROPOLE, JR.: No.
Thus, it is apparent that Salvatore does not have the type of relationship with this father essential to an award of joint custody.
Beyond this, other factors necessary for a joint custody arrangement are not present. While both parents are fit and willing to accept custody, they do not "exhibit a potential for cooperation in matters of child raising." Id. at 498. On the contrary, the proofs show that they have been unable to isolate their personal conflicts from their roles as parents and spare Salvatore from the resentments and rancor they harbor. Id. Salvatore has already been made a pawn, caught in the middle of disagreements that exist between plaintiff and defendant. A prime example is plaintiff's switching to an unlisted telephone number and giving the new number to Salvatore, with instructions that he not tell his mother about it. The parties have experienced other conflicts and would undoubtedly have a difficult time in reaching a consensus concerning major decisions affecting Salvatore. Moreover, the change in custody was not *139 in accordance with Salvatore's preference, to which the trial judge should have given due consideration. Id. at 501.
While the geographic proximity of plaintiff's and defendant's homes could provide Salvatore with easy access to both parents and to his school, we hold to the view that this one factor favoring joint custody is not sufficient to disrupt the continuity and consistency of Salvatore's life under the present sole custodial arrangement with his mother. This arrangement has worked well during the past several years and clearly contributed to Salvatore being found by the trial judge to be a well-adjusted and well-brought up boy.
Finally, we are satisfied that the joint custody arrangement imposed here, even if workable, is not in the best interests of Salvatore. The constant shuttling of Salvatore between his father and his mother every few days, week in and week out, will be disruptive of the stability essential to Salvatore's emotional well being and development. In our view, to permit a joint custody arrangement of the kind here imposed would expose the emotional and mental fabric of the child to severe, if not permanent, damage and should not have been utilized as means of giving Salvatore exposure to both parents.
Accordingly, the order modifying the custody arrangement is reversed, the initial sole custody determination, agreed upon by the parties and incorporated in the judgment of divorce, is reinstated.

II
Since we reverse that portion of the order directing joint custody, we also reverse that portion of the order reducing child support to $35 a week. The only reason that the trial judge reduced the amount of child support was because he modified the custody arrangement. Since we now overturn that decision and since there are no proofs in the record to support any reduction in child support, we reverse that portion of the order as well.

*140 III
Defendant also contends that the award of counsel fees and costs of $1,000 was inadequate and that the trial judge should have awarded counsel fees of $5,000 for the legal services rendered to defendant in connection with this motion. We disagree. We are satisfied that the trial judge did not mistakenly exercise his discretion by awarding counsel fees and costs totalling $1,000. Thus, that portion of the order under review is affirmed.

IV
Finally, defendant contends that the trial judge erred in failing to determine the amount of arrearages in alimony and child support due her from plaintiff. Defendant claims that since plaintiff offered no proof to demonstrate that he did not have the ability to pay the accumulated arrearages, and since the only dispute centered on credits to which plaintiff was entitled for reimbursement of medical expenses received by defendant from Blue Cross/Blue Shield of New Jersey, the trial judge should not have left the resolution of the issue of arrearages to agreement of counsel or a summary hearing at some future date. We agree.
In our view, the trial judge should have determined the amounts of arrearages in alimony and support due to defendant. If there were disputed factual issues as to the amount of the arrearages, plaintiff's ability to pay the accumulated arrearages, or the amount of credits to which plaintiff was entitled, the trial judge should have conducted a plenary hearing and resolved the matter. The proper procedure to have followed in these circumstances was appropriately commented upon in Tancredi v. Tancredi, 101 N.J. Super. 259 (App.Div. 1968):
Although a trial court may hear and decide a motion or an order to show cause exclusively upon affidavits, it should not do so when the affidavits show, as they do here, that there is a genuine issue as to material facts. See R.R. 4:44-4 and R.R. 4:85-5. Where the disposition of such proceedings hinges upon factual issues and credibility is involved, the court should, in the exercise of the *141 discretion conferred by the aforementioned rules, take oral testimony. See Romano v. Maglio, 41 N.J. Super. 561, 573 (App.Div. 1956), certification denied 22 N.J. 574 (1956), certiorari denied, 353 U.S. 923, 77 S.Ct. 682, 1 L.Ed.2d 720 (1957). "Only by such procedure can a court make certain that it has fully explored the issue and correctly adjudged it. `Cross-examination is the most effective device known to our trial procedure for seeking the truth.' * * *" First National Bank of Freehold v. Viviani, 60 N.J. Super. 221, 225 (App.Div. 1960). The fact that counsel "waived oral testimony" should not deter the court from so proceeding. [at 262]
See, also, Lepis v. Lepis, 83 N.J. 139, 159 (1980); Shaw v. Shaw, 138 N.J. Super. 436, 440 (App.Div. 1976); Hallberg v. Hallberg, 113 N.J. Super. 205, 207-208 (App.Div. 1971).
We must not lose sight of the fact that the enforcement, collection, modification and extinguishment of unpaid arrearages in alimony and child support payments are matters addressed to the sound discretion of the court. Each case demands careful examination and weighing of all of the essential facts. Tancredi v. Tancredi, supra 101 N.J. Super. at 261; Liss v. Liss, 19 N.J. Super. 358, 361 (App.Div. 1952); Federbush v. Federbush, 5 N.J. Super. 107, 110 (App.Div. 1949). Moreover on an application to determine the amount of arrearages and to compel their payment, the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay arrearages. Madden v. Madden, 136 N.J. Eq. 132, 136 (E. & A. 1945); Winter v. Winter, 162 N.J. Super. 456, 461 (App.Div. 1978); Welser v. Welser, 54 N.J. Super. 555 (App.Div. 1959). Support obligations, as with alimony obligations, do not automatically "vest as they become in arrears but are subject to the control of the court." Federbush v. Federbush, supra 5 N.J. Super. at 110.
Since the parties have not been able to resolve their differences in this case, we remand the matter to the trial judge to determine the amount of arrearages in alimony and child support, conducting a plenary hearing with respect to those issues that are in dispute.

*142 V
Accordingly, by way of summary, (1) we reverse those portions of the order of the Chancery Division which modified the judgment of divorce to require a joint custody arrangement and to reduce the amount of child support to $35 a week; (2) we affirm that portion of the order awarding counsel fees and costs of $1,000 and (3) we remand the matter to the trial judge to determine the amount of arrearages in alimony and child support due. We do not retain jurisdiction.