**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0579-20

JOHN ORR,

    Plaintiff-Appellant,

v.

SYLVANNAH ORR,

    Defendant-Respondent.

_____

Argued September 13, 2021 – Decided October 6, 2021

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1281-18.

Andrew M. Shaw argued the cause for appellant (Freeman Law Center, LLC, and Shaw Divorce & Family Law, LLC, attorneys; Adam C. Brown and Andrew M. Shaw, on the briefs).

Kristyl M. Berckes argued the cause for respondent (Lawrence Law, LLC, attorneys; Jeralyn L. Lawrence and Kristyl M. Berckes, on the brief).

PER CURIAM

In this post-judgment matrimonial action, plaintiff John Orr challenges a September 18, 2020 Family Part order denying his motion for reconsideration of a July 24, 2020 ruling that modified the parties' parenting time schedule. Plaintiff also challenges the court's denial of his request to establish an appropriate child support order and its decision to award defendant, Sylvannah Orr, $1000 in attorney's fees. Having reviewed the record against the applicable legal principles, we vacate those portions of the July 24, 2020 and September 18, 2020 orders under review, and remand for further proceedings.

I.

We briefly summarize the pertinent facts. The parties married in July 2010, and two children were born of the marriage. On October 18, 2018, the trial court entered a dual final judgment of divorce which incorporated the terms of an "oral marriage settlement agreement" that was placed on the record and which purportedly settled all financial issues between the parties. Among other terms, the oral agreement acknowledged that with respect to the certain credit card debt and an outstanding loan:

> The parties have agreed that defendant shall be responsible for [fifty] percent of the debt up to the, and including the July 16[,] 2016 debt. But her . . . contribution shall be limited to $5400.

A-0579-20

> There's also a claim by plaintiff for contribution by defendant toward a $25,000 loan from his parents. The parties have agreed that [defendant] will pay $5000 toward that debt.

The oral agreement, however, did not resolve custody or parenting time issues. Accordingly, over the next year, the parties successfully worked with custody expert Sharon Ryan Montgomery, Psy.D., and agreed on a custody and parenting time plan that they memorialized in an October 29, 2019 consent order. The consent order designated plaintiff "as the parent of primary residence" and specified that the children would reside with him in North Carolina.

Because plaintiff lived several states away, the parties agreed that parenting time would be scheduled in "blocks of time," based on the children's school schedule. As specifically detailed in the consent order:

> The North Carolina school sessions are nine weeks on and three weeks off. Defendant shall, therefore, have parenting time with the children on approximately three and one half of the four track outs each year. For May, 2020, [d]efendant shall have the children from May 16, 2020 until May 31, 2020. Plaintiff shall have the children from July 1, 2020 until July 8, 2020. The parties shall adjust the schedule similarly in 2021 and going forward in that the specific dates shall vary in subsequent years. This may be modified by mutual agreement of the parties and confirmed by email.

3

The consent order also addressed parenting time as to the Thanksgiving and Christmas holidays. Specifically, it provided that defendant would exercise parenting time with the children for the Thanksgiving holiday if it fell within a track out. The parties would alternate Christmas breaks with defendant having odd years and plaintiff having even years.

Finally, the order addressed concerns regarding defendant's prior drug use, and required her to have a "hair follicle test for drugs each quarter with a look back of ninety . . . days prior to any parenting time with the children." It further provided that in the event defendant tested positive for any illicit drugs, her parenting time would be suspended "until a clean drug test is submitted."

In 2020, as a result of the COVID-19 pandemic, the children's North Carolina school district, like many others, was forced to alter its calendar resulting in an additional time off for summer break from June 11, 2020 to approximately August 16, 2020. Defendant spoke with plaintiff and requested additional parenting time during this period. Plaintiff declined defendant's request as he contended it was contrary to the detailed and intensely negotiated consent order which took into account the children's best interests, and defendant's prior drug use. Defendant thereafter filed an order to show cause arguing that the consent order should be immediately modified as the COVID-

4

19 pandemic constituted a change in circumstance that warranted alteration of the parenting time schedule.

The parties submitted supporting and opposing certifications in which they disputed the intent and meaning regarding certain terms in the consent order, and specifically whether defendant was entitled to parenting time when the children were on vacation from school, including during any extended summer breaks. Plaintiff maintained that defendant was "under the mistaken belief that [her] parenting-time is during any vacation time the children have" and that nothing "in the agreement designates vacation time as time when the [d]efendant will have the children, nor have we been traditionally exercising parenting-time in such a manner." In sum, plaintiff claimed that defendant was only permitted to parenting time during the children's track outs.

In contrast, defendant maintained that track out time was synonymous with holidays and vacations, and that the children's school itself refers to those days as vacation time. Accordingly, defendant claimed that "it was intended [for her to] . . . have parenting time with the children during every single track out/vacation," and that she should be permitted to parent the children during the extended summer break.

5

On July 24, 2020, the court ordered the parties to evenly split the unplanned nine-week vacation after concluding defendant established a prima facie showing of changed circumstances. The court found that "parenting time [was] scheduled because of the North Carolina [. . .] school calendar" and during the pandemic, the calendar went "up in smoke." The court explained that "[o]nce that school calendar no longer existed, it justifie[d] a change in circumstances, which justifie[d] a modification in parenting time."

The court reasoned that the "spirit and general purpose" as it related to defendant's parenting time, "was to grant visitation to the [d]efendant for the majority of the time when the children were not in school." The court further found that any future school vacation, track out, or break from school that was not considered in the consent order be equally shared by the parties. The court also permitted defendant to exercise parenting time during the first week of July 2021 to make up for missed time during 2020. Finally, the court concluded that a plenary hearing was not required as there was no dispute of material fact.

Plaintiff moved for reconsideration of the July 24, 2020 order and for other, unrelated relief. Specifically, he requested that the court: 1) establish a child support order; 2) compel defendant to pay the $10,400 of outstanding debt reflected in the October 18, 2018 oral agreement; 3) vacate the July 24, 2020

6

order as it related to parenting time; and 4) award attorney's fees. Defendant opposed the motion and cross-moved for an award of attorney's fees.

In plaintiff's accompanying certification, he maintained that contrary to the court's finding, track out days were distinct from vacation time under the terms of the parties' consent order. With respect to his separate request that the court establish a child support order, he certified that "custody issues (which include things such as child support) were still outstanding when the divorce agreement was made" and that the "financial issues discussed were for real property, other assets, and financial debt." Plaintiff further stated that he solely "pay[s] for mental health counselling . . . the scholastic support program . . . all food, medical insurance, clothing, and the roof over [the children's] head."

On September 18, 2020, the court issued both a written and oral decision denying plaintiff's motion for reconsideration. In its oral decision, the court stated:

> [T]he spirit clearly to this [c]ourt of the [consent] order was considered by this [c]ourt and implemented, and nothing has been presented at this time that would change the [c]ourt's finding. Nothing different has been presented. [The court] considered the order, how it was made, when it was made, why it was made. And it was clear, as [the court] stated, from the four corners of the order that – and that's how [the court] ruled, and that's how [the court] will continue to rule. So [defendant's]

7

motion for reconsideration is denied under Rule 4:49-2.

The court also found that the parties did not impermissibly waive child support, but rather considered it during extensive post-divorce proceedings as reflected in the $10,400 defendant agreed to pay plaintiff. Specifically, the court noted in its oral decision that the "decision at the time of the order was no child support" because it was "clear from the documents and from the papers that all the financial issues were considered."

In its supplemental written decision, also issued on September 18, 2020, the court further explained that absent a showing of changed circumstances, it would not enter a child support order:

> Here, the parties reached a post-divorce settlement in which [d]efendant agreed to furnish payments to [p]laintiff, totaling $10,400. Plaintiff contends that payment of such does not amount to support, and that [d]efendant seeks to improperly waive her child support obligation through payment of the $10,400. The court, upon reviewing the prior history of the parties finds that the parties engaged in extensive post-divorce negotiation and litigation, during which no child support order was entered, however, the parties did discuss finances extensively. The court is unpersuaded by the argument that some specific child support discussions never arose, but rather finds that support was a consideration in establishing the amount [d]efendant was to pay to [p]laintiff. Thus, the court finds that there was no impermissible waiver of child support, but instead the incorporation of support

A-0579-20

obligations into the payment schedule agreed upon by the parties.

Further, the court ordered defendant to pay plaintiff $300 per month to satisfy the $10,400 debt outlined in the oral agreement. Finally, after considering the Rule 5:3-5(c) factors, the court awarded defendant $1000 in attorney's fees, concluding that plaintiff's motion for reconsideration, at least with respect to the parenting time issue, "was not reasonable and not [filed] in good faith."

This appeal followed in which plaintiff raises four issues. First, he argues the trial court erred in refusing to enter a child support order. Second, he contends the court's decision to modify the parenting time schedule in the consent order incorrectly failed to: recognize that any changed circumstance was temporary, conduct a plenary hearing, require the parties to attend mediation, and substantively analyze the custody factors set forth in N.J.S.A. 9:2-4(c).

Third, he maintains the court erroneously concluded he acted in bad faith and incorrectly evaluated the Rule 5:3-5(c) factors. Finally, he requests that we direct a new judge be assigned to the matter in the event of a remand, contending that the court made improper credibility determinations without an evidentiary

hearing, concluded he filed the reconsideration motion in bad faith, and failed to apply controlling legal principles.

II.

To address the issues presented to us, we first consider the relevant legal principles and the applicable standard of review.  The scope of our "review of a trial court's fact-finding function is limited [,]" and we ordinarily defer to factual findings "when the evidence is largely testimonial and involves questions of credibility."  Cesare v. Cesare, 154 N.J. 394, 411–12 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).  However, "'where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' the traditional scope of review is expanded."  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188–89 (App. Div. 1993)).  In those circumstances, we must reverse a trial judge's determination where his or her findings go "so wide of the mark that a mistake must have been made."  Ibid. (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989), certif. denied, 117 N.J. 165 (1989)).  Further, the trial court's "legal conclusions, and the application of

those conclusions to the facts, are subject to our plenary review."  Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015).

By statute, parents are presumptively required to provide for the financial support of their unemancipated children.  N.J.S.A. 2A:34-23(a).  The state has established presumptive Guidelines, and a corresponding worksheet, to calculate child support.  See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A and IX-B to R. 5:6A, www.gannlaw.com (2021). The Rules prescribe that the Guidelines "shall be applied when an application to establish or modify child support is considered by the court."  R. 5:6A; see also Lozner v. Lozner, 388 N.J. Super. 471, 479-80 (App. Div. 2006).  "A court may deviate from the [G]uidelines only when good cause demonstrates that [their] application . . . would be inappropriate."  Id. at 480 (citing Ribner v. Ribner, 290 N.J. Super. 66, 73 (App. Div. 1996)).

We agree with plaintiff that the court erred in failing to establish a child support award and concur that the record does not support the court's factual and legal conclusions that the parties' oral agreement addressed child support.  First, the parties' oral agreement is devoid of any reference to child support.  As is apparent from a review of the transcript from the October 18, 2018 proceeding, the $10,400 represented an agreement for defendant to reimburse plaintiff

$5,400 in credit card debt and a $5,000 contribution to the plaintiff's parents for a $25,000 loan. The record contains no support for the conclusion that these payments were in lieu of defendant's obligation to provide financial support for the minor children.

Second, we also note that at the time of the entry of the October 18, 2018 final judgment of divorce, a parenting time schedule had yet to be agreed to by the parties, and the parties did not append the requisite child support guidelines to the October 18, 2018 order as required for every child support order under Rule 5:6A ("A completed child support guidelines worksheet in the form prescribed in Appendix IX of these Rules shall be filed with any order or judgment that includes child support that is submitted for the approval of the court.").

In addition, the court's decision finding that the parties properly waived their children's right to child support is also factually unsupported and incorrect as a matter of law. Child support is necessary to ensure that parents provide for the "basic needs" of their children, Pascale v. Pascale, 140 N.J. 583, 590 (1995). The right to child support "belongs to the child" and, therefore, cannot be waived by the custodial parent. Id. at 591. An order regarding child support "must be based on an evaluation of the child's needs and interests and not on the conduct

of the parents." Ibid. As noted, the parties' oral agreement never addressed their support obligation and there is no proof in the record to support a finding or conclusion that the parties considered that issue.

III.

We also conclude the court's decision to modify the parties' parenting time schedule on the record before it, and without a plenary hearing, was in error. A parent seeking to modify a parenting time schedule "bear[s] the threshold burden of showing changed circumstances which would affect the welfare of the children." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div. 1958)). Changed circumstances are evaluated based on those existing at the time the prior parenting time order was entered. See Donnelly v. Donnelly, 405 N.J. Super. 117, 127-28 (App. Div. 2009). Upon such a showing, the court may hold a plenary hearing to resolve genuine issues of material fact. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976); Lepis v. Lepis, 83 N.J. 139, 159 (1980); R. 5:8-6).

When the court is confronted with a dispute regarding parenting time, the primary concern is the best interests of the children. See Sacharow v. Sacharow, 177 N.J. 62, 80 (2003) (citations omitted). The court must consider "what will

13

protect the safety, happiness, physical, mental and moral welfare of the child."

Mastropole v. Mastropole, 181 N.J. Super. 130, 136 (App. Div. 1981) (internal quotations and citation omitted). "A judgment, whether reached by consent or adjudication, embodies a best interests determination." Todd, 268 N.J. Super. at 398. Where a prior court order exists specifying the terms of residential custody and parenting time, a parent seeking to alter those terms has the burden of demonstrating a material change in circumstances. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). However, if the best interests of the children are better served by overriding a prior agreement, the court should not hesitate to make a modification. See P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999).

Factors affecting a child's best interests include, but are not limited to:

> [T]he parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the

14

extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2-4(c).]

When parents cannot agree on a custody arrangement, "[t]he court shall specifically place on the record the factors which justify" the custody arrangement it reached. N.J.S.A. 9:2-4(f). "[T]he articulation of reasons by the trial court in a child custody proceeding must reference the pertinent statutory criteria with some specificity and should reference the remaining statutory scheme at least generally, to warrant affirmance." Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994).

In addition, it is well-established that a plenary hearing is necessary when a genuine issue exists as to a material fact. Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006). Indeed, a plenary hearing is required as "trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995) (citation omitted); see Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004). A plenary hearing is usually appropriate before the entry of an order affecting the custody of a child. See Fusco v. Fusco, 186 N.J. Super. 321, 327-29 (App. Div. 1982).

15

Here, the parties' certifications raised a significant dispute as to the parenting time schedule memorialized in the October 29, 2019 consent order that required a plenary hearing. Defendant maintained that track outs are synonymous with vacation days, and therefore she is entitled to parenting time for all such periods, while plaintiff certified to the contrary and further attested that the parenting time schedule memorialized in that consent order took into consideration defendant's prior drug use, a fact the court did not appear to consider.

Again, we are satisfied that the parties' certifications raised disputed factual questions on that point that could not be resolved upon the plain language of the consent order itself. Without a more developed record, it was incorrect for the court to conclude that the intent behind this language was to allow defendant parenting time for all time designated as vacation days.

We also believe a remand is appropriate for the court to consider the present circumstances regarding the children's schedule and if they have returned to a schedule closely resembling that detailed in the consent order. Other circumstances may also have changed during the pendency of the appeal. We leave it to the parties and the court to address any such issues as appropriate on remand but stress that the court is obligated to address substantively the best

16

interest factors delineated in N.J.S.A. 9:2-4(c) in the event it determines a modification of the parties' parenting time schedule is appropriate. Finally, we also believe it beneficial to the parties for the court to refer the parenting time issue to mediation in accordance with Rule 5:8-1, as the "parenting time issues . . . are a genuine and substantial issue."

## IV.

We next turn to plaintiff's fourth point, whether the trial court erred in granting defendant's request for counsel fees. Given our decision that the court erred in modifying the parenting time schedule without a plenary hearing, we vacate the counsel fee order and do not address plaintiff's remaining arguments that the court incorrectly concluded he acted in bad faith, failed to explain adequately the basis for the $1000 award, or erred in its analysis and evaluation of the Rule 5:3-5(c) factors.

## V.

Finally, plaintiff argues that on remand the case should be assigned to a different judge in part because of the court's findings that he filed his reconsideration motion in bad faith. We conclude such a remedy is unnecessary in this case. First, we have vacated that portion of the court's orders that led to the fee award thereby vitiating its finding that plaintiff acted improperly in

seeking reconsideration. Second, we note that the court granted a portion of plaintiff's requested relief by ordering defendant to reimburse plaintiff for the outstanding $10,400 debt. Finally, we observe that the judge is an experienced judge of the Family Part, and we have every confidence that she can adjudge the matter fairly and properly on remand.

We accordingly vacate the July 24, 2020 and September 18, 2020 orders, in part, and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0579-20