**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1512-22

MARCI L. SPIRO,

    Plaintiff-Respondent,

v.

SCOTT M. SPIRO,

    Defendant-Appellant.

_____

Submitted September 18, 2024 – Decided October 18, 2024

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0185-17.

Scott M. Spiro, appellant pro se.

Weinberg & Cooper, LLC, attorneys for respondent (Jennifer E. Flatow, on the brief).

PER CURIAM

Defendant Scott Spiro appeals from the trial court's December 9, 2022 order granting a downward modification of his alimony, the assessment of

arrears, and an award of attorney's fees in favor of plaintiff Marci Spiro. Following our review of the record and the applicable legal principles, we affirm.

I.

The parties were married for thirty-three years. A judgment of divorce was entered in June 2018, incorporating a property settlement agreement (PSA). Defendant was earning $327,441 at the time of the divorce and agreed to pay plaintiff "open durational alimony in the sum of $5,576.92 every two weeks . . . ($145,000.00 per year)." The alimony was calculated based on a forensic analysis of defendant's average annual gross income by the parties' joint forensic expert, Carleen Gaskin, CPA.

In 2013, plaintiff was declared disabled by the Social Security Administration in 2015. Plaintiff received a net Social Security payment of $6,084 annually at the time of the divorce.

In August 2019, defendant moved to reduce his alimony based on a significant change in his income following the divorce. Plaintiff cross-moved to enforce the PSA and the payment of arrears. The trial court denied defendant's motion without an evidentiary hearing. He moved for

2

reconsideration. The court denied the reconsideration application and ordered defendant to pay $250 bi-weekly toward arrears and $500 in counsel fees.

Defendant appealed the court's orders. We subsequently vacated the orders and remanded, concluding "defendant met his burden of showing a prima facie case of changed circumstances." Spiro v. Spiro, No. A-3548-19 (App. Div. July 16, 2021) (slip. op. at 15). We further directed the trial court to conduct an evidentiary hearing, but "express[ed] no opinion as to the outcome." Id. at 18.

Following our remand, the trial court held a plenary hearing over five days. During the hearing, testimony was taken from the parties, their adult son Todd, and Gaskin, who the court appointed as a forensic accounting expert.

Gaskin testified she conducted an analysis of defendant's business, personal income, and cash flow from 2018 to 2021. She testified she verified the revenues of defendant's company and "notice[d] a decline in the business's revenues in 2018." She explained defendant's business had lost "various different clients and contracts over the past couple of years," despite his attempts to develop new business.

Gaskin testified she "review[ed] the expenses that were paid through both [defendant's] personal and business accounts," which she explained is "allowable given . . . the sole proprietorship status of his business." Gaskin

further explained how she accounted for defendant's business and personal expenses. She determined his average net annual available cash flow from 2018 through and including 2021 was $245,959. In coming to this figure, Gaskin considered the approximate $184,000 defendant owes in back taxes, as well as the $45,000 grant and $150,000 loan he received for his business during the COVID-19 pandemic. She further acknowledged the Paycheck Protection Program (PPP) loan and Economic Injury Disaster Loan (EIDL) defendant received in 2020 were likely non-recurring items and that the EIDL would have to be paid back.

Defendant, age sixty-five, testified he focused his business on the sale of imitation fragrances to discount retail stores. He stated his income as a self-employed sales representative in the cosmetics industry decreased beginning in 2018 due to the "collapse" of two of his major customers, K-Mart and Rite Aid.[1] Defendant also testified the United States' imposition of a ten percent tariff on beauty products coming from China hurt his business. Additionally, he explained the COVID-19 pandemic, coupled with increased online shopping,

---

[1] K-Mart filed for bankruptcy, and Rite Aid closed a large number of its stores in 2018.

A-1512-22

contributed to lower consumer traffic in brick-and-mortar stores and resulted in smaller orders from retailers, and in turn, smaller commissions from suppliers.

Before the downturn, defendant testified he maintained a "nice life" and was "able to buy things and do things and go places." He further noted, "it was a big contrast of my lifestyle of what it was when we were married to what it is now." Defendant testified his lifestyle changed "drastically" since 2018. He stated he tried to mitigate the loss by finding a job at My Sales, where he was hired to be an independent sales representative. Defendant testified that he worked to reduce his personal and business expenses, including laying off employees from his business.

Defendant asserted he attempted to stay current with alimony while incurring federal and state income tax debt of over $180,000. He testified he sometimes paid alimony with his credit card. He claims he has debts of nearly $500,000. Defendant maintains his four-year average cash flow was actually $189,474 (derived from Gaskin's cash flow figures after normalization adjustments, less federal and state tax liability) or, alternatively, $205,068 (the average of defendant's reported gross income).[2]

---

[2] Defendant also argues Gaskin did not utilize a weighted average that discounts the impact of an aberrant year, and therefore, she included the unusual cash flow

Plaintiff, age sixty-four, testified she continues to reside in the marital home in Teaneck and that she does not own a car. She stated that having an around-the-clock home health aide is a necessity to manage her health issues, and she pays $4,258 monthly for her live-in aide. She testified she pays $1,268 per month in transportation expenses because she cannot drive. Plaintiff also explained her monthly food and household expenses are $1,100. She was unaware of her debts. She also stated she had a Charles Schwab account from which she withdrew $76,000 in 2022 "to pay . . . bills."[3]

Todd Spiro testified that he visits plaintiff weekly since he moved out of the home years ago. He provides his mother with physical assistance by helping her move and getting her out of a chair, out of bed, and into a car. He testified the aides help his mother with activities of daily living, such as eating. Additionally, Todd testified his mother has bells she uses to alert her aides when

---

in 2020 due to the COVID-19-related loans of over $419,000. He further contends she did not "de-weight" plaintiff's income in 2018, which understated the significant decline he experienced due to the circumstances described above.

[3] Defendant does not dispute plaintiff suffers from health issues but challenged her need for an around-the-clock aide and her failure to apply for benefits to assist with her expenses. Defendant further questioned her need for travel expenses, her failure to request county transportation for medical visits, and the extent of the costs for her aide.

she needs help, and he has observed her ringing the bells "multiple times throughout the night."

The trial court, as discussed more fully below, issued a comprehensive written opinion reducing defendant's annual alimony obligation from $145,000 to $83,000. The court further recalculated and enforced defendant's arrears and set the figure at $75,000. The court also awarded plaintiff counsel fees in the amount of $5,000. This appeal followed.

II.

Defendant contends the court improperly calculated his income for purposes of alimony by including one-time non-recurring cash flow. He further asserts the court failed to apply the holding in Mastropole v. Mastropole in determining the issue of how to calculate arrears or whether to waive them completely. 181 N.J. Super. 130, 141 (App. Div. 1981). He next argues the court improperly granted plaintiff's application for counsel fees. He also contends plaintiff offered no proof of her financial situation and the need for an aide.

The decision of a family court to modify alimony is reviewed under an abuse of discretion standard. Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015); Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006).

The standard of review of an alimony award is narrow—a trial court has broad, but not unlimited, discretion, which must take into account the factors set forth in N.J.S.A. 2A:34-23(b) and case law. See Crews v. Crews, 164 N.J. 11, 24-25 (2000).

## A.

Defendant contends the trial erred by using $245,000 as his average annual income, rather than the $197,000 or $205,068 figures he proposed. Defendant asserts the court arrived at this number by improperly including one-time non-recurring cash flow and the proceeds he received from the Small Business Association, the PPP, and the EIDL—all of which were either non-recurring grants or loans that had to be paid back. The income figure was also based on transfers from defendant's savings account into his operating account. He asserts the court did not explain its inclusion of these figures into its income analysis. Accordingly, "[t]hese errors led the [c]ourt to [o]rder [defendant] to pay an alimony number that is inaccurate and inflated."

Defendant further asserts the court "did not properly consider all the evidence presented such as [p]laintiff's lack of candor or credibility with the court, her 'exaggerations' on her financial statement, and her failure to utilize other resources available . . . through Medicare and Medicaid." He contends

that a $5,000 per month alimony figure is "sufficient, fair, and equitable," as opposed to the $6,916 figure imposed by the court.

Plaintiff counters that Gaskin properly took into account all of defendant's funds. Plaintiff notes the trial court found Gaskin to be credible with how she "took into account all pandemic related income sources, and calculated an average income for [defendant] which the trial court, in its discretion, relied on in part." Plaintiff additionally notes, "Gaskin did not include [other] one-time deals . . . which resulted in additional net income [of] $33,528." Plaintiff further argues "[defendant] cannot cherry-pick which one-time sources of income are attributable to him and which are not. The trial court appointed a forensic accountant to determine [defendant's] available income, and that is what the expert's report concluded."

Plaintiff cites to Bonanno v. Bonanno for the proposition that "while the husband's current income is the primary fund looked to for his wife's support[,] . . . nevertheless, the husband's property and capital assets and his capacity to earn the support awarded by diligent attention to business—his earning capacity or prospective earnings—are all proper elements for the court's consideration . . . ." 4 N.J. 268, 275 (1950). Plaintiff argues the "trial court properly, and with detailed findings, applied the factors of N.J.S.A. 2A:34-23(b) in making a

9

determination of the alimony award."  Additionally, "[w]hile the [c]ourt did rely upon . . . Gaskin's cash flow analysis in addressing the factors, the [c]ourt made additional findings based upon the testimony [from defendant.]"

Turning to our analysis, we reiterate that "[w]hether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion."  Larbig, 384 N.J. Super. at 21 (citing Innes v. Innes, 117 N.J. 496, 504 (1990)).  Each individual motion for modification is particularized to the facts of that case, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters."  Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).  A judge's findings are binding so long as his or her determinations are "supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 412 (1998).

Against that backdrop, N.J.S.A. 2A:34-23 provides:

> Pending any matrimonial action . . . brought in this State . . . , or after judgment of divorce or dissolution or maintenance, whether obtained in this State . . . , the court may make such order as to the alimony or maintenance of the parties, . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . .

A-1512-22

"Whether alimony should be awarded is governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b)." Gnall v. Gnall, 222 N.J. 414, 429 (2015); Crews, 164 N.J. at 24. The factors are as follows:

(1)  The actual need and ability of the parties to pay;

(2)  The duration of the marriage or civil union;

(3)  The age, physical and emotional health of the parties;

(4)  The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;

(5)  The earning capacities, educational levels, vocational skills, and employability of the parties;

(6)  The length of absence from the job market of the party seeking maintenance;

(7)  The parental responsibilities for the children;

(8)  The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9)  The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education

11

of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

We are unpersuaded by defendant's argument that the court erred by relying solely on defendant's cash flow, which was based, in part, on non-recurring revenue in ultimately calculating his income. The court—recognizing defendant owned his own business—prudently appointed an independent forensic accountant. Gaskin analyzed defendant's business, financial records, and cash flow. However, the court did not exclusively rely on Gaskin's cash flow analysis in rendering its decision. Rather, the court also assessed

defendant's testimony regarding the income he derived from his current accounts. Moreover, the court recognized the grants and loans defendant obtained during the COVID-19 pandemic "were most likely one-time payments, and the loan must be repaid."[4]

The court noted Gaskin concluded defendant's "net available cash flow was an annual average of $245,742 from 2018 through and including 2021." The court then found, "[d]efendant had testified that he presently is paid $25,000 monthly by My Sales, from which he applies $10,000 to his business expenses and $15,000 to his personal expenses. (The line between the business and personal expenses appears to have been [oftentimes] blurred.)"

The court further observed, "[t]he $15,000 monthly totals $180,000 annually. Defendant also testified to having additional income of $40,000-50,000 annually from Profusion Cosmetics and $10,000-20,000 annually with other companies." The court stated further, "[t]he total income of $230,000 to $250,000 is within the range of . . . Gaksin's conclusion. Accordingly, an income of $245,000 will be used for . . . defendant in calculating the alimony to be paid."

---

[4] The court further noted, "[t]hese figures were calculated considering the repayment of defendant's tax liability. The figures include withdrawals from emergent funds, along with loans, grants and unemployment income that are pandemic related."

Additionally, the trial judge considered the relevant factors under N.J.S.A. 2A:34-23(b).

The court appropriately and reasonably modified defendant's alimony payments and reduced the payment from $145,000 to $83,000 annually to reflect defendant's decreased income. Because the trial court reasonably based its decision on information and testimony of both defendant and Gaskin, we discern no reason to disturb its decision. In short, there was ample evidence in the record to support the court's conclusion, and we conclude the court did not misapply its discretion.

B.

Defendant next argues the court failed to apply the holding of Mastropole because it had the discretion not to award any arrears. He contends that $5,000 per month "is not only the right [alimony] number . . . but it will eliminate the need to award any arrears."

In Mastropole, we noted, "[s]upport obligations, as with alimony obligations, do not automatically 'vest as they become in arrears but are subject to the control of the court.'" 181 N.J. Super. at 141 (quoting Federbush v. Federbush, 5 N.J. Super. 107, 110 (App. Div. 1949)). We further noted, "on an application to determine the amount of arrearages and to compel their payment,

14

the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay arrearages." Madden v. Madden, 136 N.J. Eq. 132, 136 (E. & A.1945).

Here, the court found "no compelling reason to disturb the arrears that accrued prior to the September 2019 filing date." The court noted that "defendant continued to spend money at a fast pace in December 2018, after financial circumstances allegedly began to falter." The court further rejected defendant's attempt to adjust the arrears prior to the filing date of the original motion because defendant did not seek that relief in his motion.

The court appropriately recalculated defendant's arrears consistent with its modification of the alimony award. Moreover, the court acknowledged defendant's debt and compared the income of the parties after the alimony reduction and determined defendant was capable of making payments toward his arrears. We find no basis to alter the court's findings and conclude the court did not misapply its discretion in setting the arrears.

C.

Defendant next argues the court improperly granted plaintiff counsel fees. The decision to award counsel fees is within "the sound discretion of the trial court." Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021). The

15

trial court's decision in that regard is therefore evaluated under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008). We will only disturb the trial court's decision to award counsel fees on the rarest of occasions and only where the abuse of discretion is clear. Ibid. "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'" Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021) (alteration in original) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015)).

A party in a family action may move to recover counsel fees so long as that party supports its application with "an affidavit of services addressing the factors enumerated by RPC 1.5(a)[,] . . . [and] a recitation of other factors pertinent in the evaluation of the services rendered . . . ." R. 4:42-9(b). "In a family action, a fee allowance . . . on final determination may be made pursuant to [Rule] 5:3-5(c)." R. 4:42-9(a)(1). Furthermore, the trial court, in exercising its discretion, must consider the factors enumerated in Rule 5:3-5(c). N.J.S.A. 2A:34-23; Mani v. Mani, 183 N.J. 70, 93-95 (2005). Rule 5:3-5(c) provides:

> In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to [Rule] 4:42-9, the following factors: (1) the financial circumstances of the parties;

16

(2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Here, the court analyzed the Rule 5:3-5(c) factors along with the RPC 1.5(a) factors. Plaintiff sought to be reimbursed over $60,000 in counsel fees. The court concluded, "defendant was ultimately successful with obtaining a modification and the plaintiff ultimately succe[eded] with enforcement." The court noted plaintiff had more unencumbered liquid assets and that defendant was in debt. The court observed, "[h]owever, . . . defendant does have more income available to him." The trial court conducted a detailed analysis of the applicable rules and made an appropriate fee award based on the record. The court ultimately awarded plaintiff $5,000 in counsel fees, a fraction of the amount requested, in recognition of the competing equities. We affirm substantially for the reasons expressed by the court, and we conclude the court properly exercised its discretion in awarding counsel fees.

D.

Defendant contends plaintiff failed to offer adequate proof of her financial situation. He contends that plaintiff's Social Security income plus his proposed $5,000 per month alimony will provide her over $70,000 per year to pay for her expenses. Moreover, he asserts plaintiff provided no justification or evidence from a physician for her $4,258 per month attendant and that most of that amount could be paid with government assistance.

In addressing plaintiff's need for an attendant, the court noted, "[t]here is no question" plaintiff suffers from a serious health issue. The court stated:

> There also appears to be a need for . . . plaintiff to have 24/7 care. The PSA contains the provision that . . . plaintiff cohabitating with an aide would not be grounds for a modification. Therefore, the possibility of a full-time aide was acknowledged four years ago. Todd Spiro's testimony as to . . . plaintiff's physical needs, the assistance with . . . plaintiff's activities of daily living, as well as her needing a bell to call for the aide, supports . . . plaintiff's need for 24/7 care. The cost for the full-time [aide] is $140 daily, amounting to less than $6.00 per hour, plus room and board for the aide, which does not appear to be unreasonable.

The court recognized the parties had contemplated at the time they entered into the PSA that plaintiff may eventually need continuous care. Moreover, the court found plaintiff credible in her testimony regarding her need for the care. Lastly, the court deemed the $140 per day cost to be reasonable under the

18

circumstances. We conclude the court did not misuse its discretion in making this determination. There were adequate facts in the record to support the court's decision and we find no basis to disturb its findings.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1512-22